## UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In Re:   Vito Anthony LaFata

Chapter 13
Bankruptcy Case 04-44511
Judge Joel B. Rosenthal

ADDENDUM   **CLERK'S CERTIFICATION FOR TRANSMITTAL
OF RECORD ON APPEAL**

I, JAMES M. LYNCH, Clerk of the United States Bankruptcy Court for the District of Massachusetts, do hereby certify that the annexed documents are copies of the original papers as described in the accompanying Designation of Record and constitute the Record on Appeal in the case entitled and numbered **DC 05-40010 (Addendum To Appeal –Reply Brief of Appellant, Eastern Savings Bank, FSB** .

> **IN TESTIMONY WHEREOF,** I HEREUNTO SET MY HAND AND AFFIX THE SEAL OF THIS COURT, AT WORCESTER , IN THE DISTRICT OF MASSACHUSETTS, THIS 2nd DAY OF MAY .

Date:5/2/05



James M. Lynch
Clerk, U.S. Bankruptcy Court


By the Court,

Janet Keller

Deputy Clerk
(508) 770-8946

Receipt of the documents in the above–entitled case as described in the Designation of Record is hereby acknowledged this _____ day of_____, _____.

This case has been assigned No._____.

_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-40010-JLT
(Honorable Joseph L. Tauro, District Judge)

In re:  VITO ANTHONY LAFATA

Chapter 13 Case No. 04-44511

EASTERN SAVINGS BANK, FSB, Appellant

VITO ANTHONY LaFATA, Appellee

On Appeal From An Order Of The United States Bankruptcy Court
For The District Of Massachusetts
(Honorable Joel B. Rosenthal, Bankruptcy Judge)


**REPLY BRIEF OF THE APPELLANT, EASTERN SAVINGS BANK, FSB**


COUNSEL FOR APPELLANT

James M. Liston, Esq.
Bartlett Hackett Feinberg P.C.
10 High Street, Suite 920
Boston, Massachusetts 02210
Telephone (617-422-0200

DATE: April 28, 2005

## TABLE OF CONTENTS

A.    Section 1322(b)(2) Prohibits Modification of Eastern's Mortgage  . . . . . . . . . . 1

B.    Eastern was not Required to Move to Strike or Object to Documents Attached to LaFata's Memorandum of Law.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.    Eastern Submitted an Appraisal to the Court and did not Waive its Right to an Evidentiary Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.    Eastern did not Receive Adequate Notice of Intention to Value its Collateral. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

E.    The Bankruptcy Court Erred by Relying on Eastern's Inability to Reform its Mortgage as Grounds for Allowing Modification.  . . . . . . . . . . . . . . . . . . . . . . 8

F.    The Bankruptcy Court Applied the Wrong Burden of Proof to the Valuation of Eastern's Collateral.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

G.    Eastern is not Raising New Arguments on Appeal.  . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## Cases

Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363 (D. Mass.1991) . . . 7

In re Carvalho, 335 F.3d 45 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re DaCosta, 204 B.R. 1 (Bankr. D. Mass. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Edwards, 281 B.R. 439 (Bankr. D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Fiffy, 281 B.R. 451, 454 (Bankr. D. Mass. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

In re Fiffy, 293 B.R. 550, 555 (B.A.P. 1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re French, 174 B.R. 1 (Bankr. D. Mass. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

In re Marenaro, 217 B.R. 358 (BAP 1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re White, 47 B.R. 98 (Bankr. S.D. Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## Federal Rules and Statutes

Bankruptcy Rule 3008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11 U.S.C. 1322(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 6, 7, 9, 10

## State Statutes

Mass. Gen. Laws ch. 188, §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

This Reply Brief is submitted by Appellant, Eastern Savings Bank, fsb ("Eastern"), in reply to arguments raised by Appellee, Vito Anthony LaFata ("LaFata"), in his Brief dated April 15, 2005. Sections A through G of this Reply Brief address the corresponding Sections A through G set forth in the Article V Argument section of LaFata's Brief as well as related assertions in other sections of LaFata's Brief including the section entitled Article III Statement of the Case.

      A.     Section 1322(b)(2) Prohibits Modification of Eastern's Mortgage

LaFata continues to erroneously characterize the premises at 26 Jasper Street, Methuen, Massachusetts ("26 Jasper Street") encumbered by Eastern's Mortgage as an "unimproved lot upon which the Debtor' residence encroached" (Brief at pg. 2-3). Yet he has listed 26 Jasper Street as his address and residence on his Chapter 13 voluntary petition and bankruptcy schedules (Appendix at 2 and 6). Eastern's appraisal report (Appendix at 10, Exhibit B) identifies 26 Jasper Street as a single family house lot in an area zoned for residential use. In response to LaFata's contention, Eastern could maintain that because its Mortgage (Appendix 28, Exhibit B, page 3) encumbers the 26 Jasper Street lot "TOGETHER WITH *all* the improvements now or hereafter erected on the property. . . ."(emphasis added), the Mortgage encumbers the entire residence, a portion of which encroaches on the adjoining lot known as 31 Enfield Street, Methuen, Massachusetts ("31 Enfield Street"). LaFata acquired 31 Enfield Street on June 4, 2004 (Appendix at 11) shortly prior to filing his Chapter 13 case. When he signed Eastern's Mortgage on July 24, 2003, long before he acquired 31 Enfield Street, he agreed on page 7, paragraph 6 thereof to occupy 26 Jasper Street as his principal residence. He cannot now argue that his principal residence is actually located on 31 Enfield Street, because it suits his present purpose.

1

By reference solely to the first four documents attached to LaFata's Memorandum of Law (Appendix at 27) consisting of two plans of land dated May 9, 1908 and April 20, 1914, respectively, a Mortgage Inspection Plan dated February 13, 2004, and the legal description to Eastern's Mortgage, one can ascertain that Eastern's Mortgage encumbers at least one-third of the existing dwelling situated on the approximately 100 by 90 foot tract of land identified as 26 Jasper Street. The Bankruptcy Court clearly erred in its understanding and consequent finding that the portion of the residence encumbered by Eastern's Mortgage "may be only an undisclosed deck."

LaFata misstates the facts at the end of the second full paragraph on page 15 of his Brief where he proclaims that "the land which has the Lafata residence is not the subject of the Eastern mortgage." In truth, Lafata's residence sits on land subject to Eastern's Mortgage and on land which is not. In truth, therefore, Eastern's claim is secured "by a security interest in real property that is the debtor's principal residence." 11 U.S.C. §1322(b)(2). The operative phrase in §1322(b)(2) is "real property that is the debtor's principal residence." Whether or not Eastern has an interest in "real property" is not at issue in this appeal. Instead, the substance of this issue, the proof of which favors Eastern, is whether or not the real property, in which Eastern has an interest, is "the debtor's principal residence."

The term, "principal residence" is not defined in the Bankruptcy Code; as such, this Court must look to state law to determine its meaning. See Davis v. Cox, 356 F.3d 76, 85 (1st Cir. 2004), citing, Butner v. U.S., 440 U.S. 48, 54 (1979); accord, In re Spano, 161 B.R. 880, 884 (Bankr. D. Conn. 1993) (referring to state law to define "real property that is the debtor's principal residence" as used in 11 U.S.C. §1322(b)(2)). Mass. Gen. Laws ch. 188, §1 states in

2

pertinent part that "[a]n estate of homestead . . . may be acquired pursuant to this chapter by an owner or owners of a home . . . who occupy or intend to occupy said home as a *principal residence*." (emphasis added).

Courts have held unequivocally that a debtor's "principal residence" can include contiguous parcels, even those upon which the actual home does not sit. E.g., In re Fiffy, 293 B.R. 550, 555 (B.A.P. 1ˢᵗ Cir. 2003); In re Fiffy, 281 B.R. 451, 454 (Bankr. D. Mass. 2002) (finding debtor's "principal residence" positioned on several adjacent lots) (vacated on other grounds); In re Edwards, 281 B.R. 439 (Bankr. D. Mass. 2002). The determinative question is whether "the second parcel or additional parcels [are] *actually . . .* used and occupied" by the debtor. Id. at 447 (emphasis in original).[1] Here, LaFata cannot dispute that Eastern's mortgage encumbers land actually used and occupied as LaFata's principal residence.

Even if the "principal residence" consists of real estate in which Eastern has an interest and real estate in which Eastern has none, Eastern would nonetheless retain an interest in real estate used as a principal residence. See In re White, 47 B.R. 98 (Bankr. S.D. Tex. 1985) (holding antimodification provisions of 11 U.S.C. §1322(b)(2) applicable to purchase money mortgagee who funded debtor's acquisition of her ex-husband's interest in the home). In White, as here, the mortgagee mistakenly believed it to have taken a security interest in the entirety of the debtor's residential property, in that case when it funded the wife's acquisition of her ex-husband's interest. However, it came to bear that the wife's homestead exemption (of her

_____

[1]Eastern recognizes that the expansive construction of the Massachusetts homestead and integral definition of the "principal residence" might, under different facts, collide with the restrictive holding of Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1ˢᵗ Cir. 1996), insofar as, under state law, a "principal residence" can include multi-dwelling income producing property and, under Lomas, it cannot. Fortunately, this Court will not have to split the difference in order to decide this appeal, as the property in question does not include income producing aspects.

3

original interest) prevented the subsequent purchase-money mortgage lien from attaching to her

original interest in the home. Accordingly, the mortgagee ended up with a security interest in

less than the entire "principal residence." This did not cause the bankruptcy court, however, to

thereby hold that the mortgagee had no interest. Instead, by virtue of the mortgagee having an

interest, the court held the antimodification protection of 11 U.S.C. §1322(b)(2) applicable to

prevent modification of the mortgage. To the extent that Eastern's Mortgage interest in Lafata's

residence must be viewed as only a partial interest, White holds that such a partial interest in less

than the entire "principal residence" and the underlying loan, still cannot be modified under 11

U.S.C. §1322(b)(2).

LaFata has attempted to obfuscate this plain and obvious reading of 11 U.S.C.

§1322(b)(2) by citing to cases that have held (or discussed in dicta) the statute inapplicable

where the creditor has a security interest in collateral additional to the debtor's principal

residence, citing, In re Carvalho, 335 F.3d 45 (1st Cir. 2003) (dicta) (deciding other issues but

regarding bifurcation of secured claim as likely proper due to apparent security interest in other

units of multi-unit building); Lomas Mortgage, Inc. v. Louis, 82 F.3d 1 (1st Cir. 1996) (holding

bar against modifying claims inapplicable where debtor lives in one but rents another unit in

three family house that secures claim); In re DaCosta, 204 B.R. 1 (Bankr. D. Mass. 1996)

(holding bar against modifying claims inapplicable where, applying test set forth in In re French,

174 B.R. 1 (Bankr. D. Mass. 1994), commercial language of mortgage contemplated sufficient

additional collateral, even though debtor had yet to utilize such provision). LaFata's erroneous

argument in this case is not that Eastern has an interest in collateral additional to the debtor's

principal residence, but rather that Eastern has an interest in collateral that is less than the

4

debtor's entire principal residence. However, LaFata has only cited cases for the inverse of his argument and none to support the argument. In re White, supra, is authority that the bar against modification of a mortgage on a principal residence applies even where the mortgage encumbers less than the entire principal residence.

As indicated on page 3 of LaFata's Brief, Eastern has commenced an adversary proceeding in the Bankruptcy Court to reform its mortgage to include all or a portion of 31 Enfield Street and LaFata's entire residence thereon. That action was commenced on January 19, 2005. The parties are conducting discovery and a pre-trial conference is scheduled for August 16, 2005. If Eastern is successful in that adversary proceeding, it will seek a further determination by the Bankruptcy Court as to the amount of its secured claim.[2]

On pages 3-5 of his Brief, LaFata describes his Chapter 13 Plan (Appendix at 5), pursuant to which he proposed to bifurcate Eastern's claim and pay Eastern's alleged $18,500.00 secured claim over the remaining 29 year term of Eastern's loan. LaFata subsequently withdrew that plan and filed with the Bankruptcy Court his First Amended Chapter 13 Plan (Appendix at 42). LaFata has since withdrawn his First Amended Chapter 13 Plan and has filed with the Bankruptcy Court a Second Amended Chapter 13 Plan that is not part of the record on appeal before this Court. As of this date, no Chapter 13 Plan has been confirmed by the Bankruptcy Court.

    B.    <u>Eastern was not Required to Move to Strike or Object to Documents Attached to LaFata's Memorandum of Law</u>.

---

[2] Bankruptcy Rule 3008 allows a party to move for reconsideration of an order allowing or disallowing a claim against the estate. The Rule imposes no time limitation on such a motion.

LaFata argues, on page 6 of his Brief, that Eastern was required to move to strike or object to the various exhibits attached to his Memorandum of Law at or prior to the second non-evidentiary hearing in this matter, or any objection to their admissibility was waived. No Court Order, Bankruptcy Rule or Federal Rule of Procedure or Evidence requires such objection, other than at an evidentiary hearing when such documents are offered into evidence. Attaching copies of documents to a Memorandum of Law with no independent authentication, does not automatically make them admissible evidence. LaFata cites to no authority for this argument.

C.    Eastern Submitted an Appraisal to the Court and did not Waive its Right to an Evidentiary Hearing

On page 5 of his Brief, LaFata admits that Eastern filed an appraisal but complains that the appraisal submitted by Eastern (Appendix at 10, Exhibit B) was eighteen months old and covered more than just 26 Jasper Street, likely including a portion of 31 Enfield Street. At least Eastern submitted an appraisal report which covered all of 26 Jasper Street and whose author could have given testimony at a valuation hearing on the value of Eastern's collateral. LaFata's sole assertions of value were copies of inadmissible broker's opinions of value attached to his Memorandum of Law. LaFata did not file so much as a single affidavit to authenticate or verify his assertions of value.

Similar to his argument in Section B of his Brief, on page 6 of his Brief, LaFata asserts that Eastern waived any objection to LaFata's valuation at the non-evidentiary hearing before the Bankruptcy Court on November 23, 2004. Eastern denies this allegation. Eastern, in its Objection to the Debtor's Motion for Determination of Secured Status (Appendix at 10), contested the value of 26 Jasper Street by attaching an appraisal report and a recent municipal lien certificate

6

and stating its belief that the current value of those premises was equal to greater than the value
in the appraisal report.

At the non-evidentiary hearing on October 5, 2004, the Bankruptcy Court focused its
inquiry on whether the single family residence at 26 Jasper Street was zoned for use as a rental
property and whether such rental could remove the antimodification protections of §1322(b)(2).
The Bankruptcy Court indicated a concern that such a finding could lead to circumvention of
§1322(b)(2) by a "cottage industry" of professional renters. The Bankruptcy Court requested that
LaFata provide evidence of whether his residence was zoned for rental. LaFata, as represented in
his subsequently filed Memorandum of Law (Appendix at 27, pg. 6, fn.6) could not provide
proof that rental of the premises was permissible. Thus, Eastern, in its Memorandum of Law
(Appendix at 28) and at the continued non-evidentiary hearing on November 23, 2004, addressed
the issues which the Bankruptcy Court had directed the parties to address at the October 5, 2004
hearing. Eastern believed that the Bankruptcy Court sought to make a determination, on
undisputed facts, whether §1322(b)(2) prohibited or did not prohibit modification of Eastern's
mortgage, since if it determined the former, there would be no need for evidentiary hearings on
valuation or any other matter. Eastern's arguments at the November 23, 2004 hearing that
evidentiary hearings were unnecessary, because the matter could be decided in Eastern's favor,
effectively on the pleadings and admitted facts, did not constitute a waiver of the right to an
evidentiary hearing if one was later needed. The Bankruptcy Court did not ask Eastern to waive
such right nor did it  find any such waiver in its Memorandum of Decision. Waiver is the
voluntary relinquishment of a known right. Boston Helicopter Charter, Inc. v. Agusta Aviation
Corp., 767 F. Supp. 363 (D. Mass.1991). Eastern did not waive its rights to an evidentiary

7

hearing on any issue by stating that the Bankruptcy Court could resolve the issues on the
pleadings before it in Eastern's favor without the need to conduct such a hearing. Eastern did not
expect the Bankruptcy Court to decide issues of valuation and the extent to which Eastern's
mortgage encumbered LaFata's residence on the record before it where not so much as an
affidavit had been filed to support its decision. The Bankruptcy Court's doing so was error.

        D.     Eastern did not Receive Adequate Notice of Intention to Value its Collateral.

Eastern received notice only of non-evidentiary hearings in the Bankruptcy Court on the
various matters involving its Mortgage. At no time did the Bankruptcy Court schedule an
evidentiary hearing on valuation or even indicate that it would consider evidence on valuation.
The Bankruptcy Court had before it no admissible evidence on valuation, not even in affidavit
form. Eastern relies on the authorities cited in its Appellant's Brief, Article V. Section D, filed
with this Court in support of its argument of lack of notice.

        E.     The Bankruptcy Court Erred by Relying on Eastern's Inability to Reform its
              Mortgage as Grounds for Allowing Modification.

Eastern's Mortgage had been in place for only approximately one year when LaFata filed
his Chapter 13 case and Eastern was obviously unaware of any title issues when the Mortgage
was first granted in July, 2003. LaFata only acquired the lot comprising 31 Enfield Street from a
third party on June 4, 2004 just two months prior to filing his Chapter 13 bankruptcy and, even
then, he did not record the deed to that property, keeping its ownership secret. LaFata asserts that
Eastern's loan was in default approximately five months prior to LaFata's bankruptcy (Appendix
at 18, p 7). LaFata's Chapter 13 filing on August 5, 2004 stayed Eastern's commencement of any

8

state court action to reform its mortgage. Eastern clearly had insufficient time to commence,

much less prosecute to judgment, a state court action to reform its Mortgage. More importantly,

Eastern's inability to reform its mortgage pre-bankruptcy is irrelevant to the issues at hand and

provided no grounds for permitting modification of its secured claim. However, given that the

Bankruptcy Court ascribed such importance to this issue, Eastern has commenced an action in

the Bankruptcy Court to reform its mortgage.

> F.    The Bankruptcy Court Applied the Wrong Burden of Proof to the Valuation of
>       Eastern's Collateral.

LaFata's Objection to Eastern's Proof of Claim (Appendix at 4) had nothing to do with

the valuation of Eastern's collateral. Yet the Bankruptcy Court applied, for all purposes including

valuation of collateral, a burden of proof applicable in proceedings involving objections to proofs

of claim. This was further error by the Bankruptcy Court. Eastern relies on the authorities cited

in its Appellant's Brief, Article V. Section E, filed with this Court in support of its argument that

the Bankruptcy Court applied the wrong burden of proof.

> G.    Eastern is not Raising New Arguments on Appeal.

As pointed out by LaFata, the issue of boilerplate add on language typically found in a

mortgage was never raised by LaFata as a grounds for claiming that Eastern's Mortgage could be

modified. Eastern cited In re Marenaro, 217 B.R. 358 (BAP 1st Cir. 1998) for the purpose of

showing that Eastern's Mortgage is typical of those mortgages that courts find are protected from

modification under §1322(b)(2).

## CONCLUSION

For the reasons stated above, the Appellant, Eastern Savings Bank, fsb, requests that this Court find that Eastern holds a mortgage on LaFata's primary residence that cannot be modified as a matter of law under 11 U.S.C. §1322(b)(2) and that this Court reverse the three Orders of the Bankruptcy Court dated December 8, 2004 which are the subject of this appeal, or, alternatively, reverse or vacate said Orders of the Bankruptcy Court and remand for evidentiary proceedings in the Bankruptcy Court on such issues as this Court finds necessary, including, without limitation, the value of Eastern's collateral.

> Respectfully submitted,
> Appellant, Eastern Savings Bank, fsb
> By its attorneys,
>
>
> James M. Liston
> BBO#301750
> Bartlett Hackett Feinberg P.C.
> 10 High Street- Suite 920
> Boston, MA 02110
> Tel. 617/422-0200
> Facsimile 617/422-0383

Dated: April 28, 2005

10

2d 1404, 23 C.B.C.2d

iummary judgment.
Golf Club, Inc., 192

ı contested matter
provisions of Rule
debtor is required
ıeral of the United
B.R. 380 (N.D. Ga.

ction to a proof of
F.2d 171, 174 (5th
Ed. 2d 439 (1991).
22, 225 (B.A.P. 9th

mits for filing an
ved or disallowed
must be deemed
ı II, Ltd., 898 F.2d
I.S. 759, 111 S. Ct.
765 F.2d 547 (5th

ıe right to object
lair v. Silverman,
Eubanks v. FDIC,
81 F.3d 1310 (4th

th ed. rev.).
5th ed. rev.).

## Rule 3008.

## RECONSIDERATION OF CLAIMS

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

### Advisory Committee Note

Section 502(j) of the Code deals only with the reconsideration of allowed claims as did former § 57k of the Act and General Order 21(b). It had sometimes been held that a referee had no jurisdiction to reconsider a disallowed claim, or the amount or priority of an allowed claim, at the instance of the claimant. See, e.g., In re Gouse, 7 F. Supp. 106 (M.D. Pa. 1934); In re Tomlinson & Dye, Inc., 3 F. Supp. 800 (N.D. Okla. 1933). This view disregarded § 2a(2) of the Act and the "ancient and elementary power" of a referee as a court to reconsider orders. In re Pottasch Brow. Co., Inc., 79 F.2d 613, 616 (2d Cir. 1935); Castaner v. Mora, 234 F.2d 710 (1st Cir. 1956). This rule recognizes, as did former Bankruptcy Rule 307, the power of the court to reconsider an order of disallowance on appropriate motion.

Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court. The right to seek reconsideration of an allowed claim, like the right to object to its allowance, is generally exercised by the trustee if one has qualified and is performing the duties of that office with reasonable diligence and fidelity. A request for reconsideration of a disallowance would, on the other hand, ordinarily come from the claimant.

A proof of claim executed and filed in accordance with the rules in this Part III is prima facie evidence of the validity and the amount of the claim notwithstanding a motion for reconsideration of an order of allowance. Failure to respond does not constitute an admission, though it may be deemed a consent to a reconsideration. In re Goble Boat Co., 190 Fed. 92 (N.D.N.Y. 1911). The court may decline to reconsider an order of allowance or disallowance without notice to any adverse party and without affording any hearing to the movant. If a motion to reconsider is granted, notice and hearing must be afforded to parties in interest before the previous action in the claim taken in respect to the claim may be vacated or modified. After reconsideration, the court may allow or disallow the claim, increase or decrease the amount of a prior allowance, accord the claim a priority different from that originally assigned it, or enter any other appropriate order.

The rule expands § 502(j) which provides for reconsideration of an allowance only before the case is closed. Authorities have disagreed as to whether reconsideration may be had after a case has been reopened. Compare 3 Collier, *Bankruptcy* ¶ 57.23[4] (14th ed. 1964), see generally 3 *id.* ¶ 502.10 (15th ed. 1979), with 2 Remington, *Bankruptcy* 498 (Henderson ed. 1956). If a case is reopened as provided in § 350(b) of the Code, reconsideration of the allowance or disallowance of a claim may be sought and granted in accordance with this rule.

### Overview of Rule 3008

Rule 3008 implements section 502(j) of the Code, which provides for reconsideration of an order allowing or disallowing a claim upon a showing of cause. The rule permits any party in interest to file a motion, imposes no time limitation on the motion, and merely requires notice and hearing.

### Relation to Code Sections

Section 102 defines "after notice and a hearing." Section 501 provides for the filing of proofs of claim or interests. Section 502 provides for the allowance of claims or interests and sets forth substantive grounds on which an objection to a claim may be filed. Section 502(j) provides for reconsideration for cause and governs the effect of a payment to a creditor whose claim is later reconsidered. Section 1111 governs claims in chapter 9 and chapter 11 cases.

### Relation to Other Rules

Rule 3001 governs the form, content and evidentiary effect of the proof of claim, as well as transfers of claims. Rule 3002 governs the necessity, place and time for filing proofs of claim. Rule 3003 governs proofs of claims in chapter 9 and chapter 11 cases. Rule 3004 permits the debtor or trustee to file a proof of claim for a creditor. Rule 3005 provides for the filing of claims by a guarantor, surety or other codebtor. Rule 3006 permits a proof of claim to be withdrawn. Rule 3007 governs objections to claim. Rule 3013 permits classification of claims for plan purposes.

Rule 7004 governs service of the objection to claim, a contested matter. Rule 9014 governs litigation of contested matters. Rule 9023, governing motions for new trials, excepts motions under Rule 3008 from the application of that rule.

**227**

Official Forn
of Objection to
of Case, Meet
B204 is the N
of Assets.

*Appellate Re*
quired to mo
Notice of App

*Application*
reconsiderati
extent and re
tion postcon
the delay up
faith. *In re*
1999).

Section 502(
Rule of Ban
a claim, inc
the claim a
A claim ma
and reduce
surrender
114 (Bankr

A creditor'
day perio
should be
rather tha
*In re* Agui
*re* Dartmo
Ill. 1994).

An amend
and after
an allowe
eration of
*In re* Car
142 B.R.

under section 1325
e for additional time
on of a plan;

ith respect to a term

nation under section
nation of a modified

n by reason of the
the plan other than
n;

ates trustee, failure
s, or such additional
filing of the petition
n required by para-

ates trustee, failure
by paragraph (2) of

e) of this section, at
n under section 1325
erest or the United
uring, the court may
se under chapter 11

nder this chapter to
title if the debtor is
h conversion.

on of this section, a
ler another chapter
debtor under such

)19, 2002, 9013 and

## SUBCHAPTER II

## The Plan

### 11 U.S.C. § 1321

### § 1321.    Filing of plan.

The debtor shall file a plan.

BANKRUPTCY RULE REFERENCES: 3015 and 9006

### 11 U.S.C. § 1322

### § 1322.    Contents of plan.

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated, however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real

§ 1322    BANKRUPTCY CODE    C–296

property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and

(10) include any other appropriate provision not inconsistent with this title.

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security

---

C–297    ADJUS

interest in real
residence is due
under the plan is
of the claim as
this title.

(d) The plan ma
that is longer than
approves a longer
period that is long

(e) Notwithstan
sections 506(b) an
in a plan to cure a
default, shall be de
ing agreement and

BANKRUPTCY RULE

§ 1323.   Modifi

(a) The debtor
confirmation, but
as modified fails to
this title.

(b) After the deb
the plan as modifi

(c) Any holder
rejected the plan i
the case may be, th
provides for a char
such rights were u
holder changes suc

BANKRUPTCY RULE

esidence, or of
ected the rights

any default;

red claim to be
secured claim or

this subsection,
in a reasonable
he case is pend-
im on which the
which the final

part of any claim

provide for the
y executory con-
t previously re-

part of a claim
state or property

of the estate, on
ne, in the debtor

sion not inconsis-

l applicable non-

ve rise to, a lien
be cured under
il such residence
ted in accordance

it on the original
nly by a security

interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

(d) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

(e) Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

BANKRUPTCY RULE REFERENCES: 3012 and 3013

**11 U.S.C. § 1323**

## § 1323.   Modification of plan before confirmation.

(a) The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title.

(b) After the debtor files a modification under this section, the plan as modified becomes the plan.

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.

BANKRUPTCY RULE REFERENCES: 3015 and 3019

Westlaw.

M.G.L.A. 188 § 1

Massachusetts General Laws Annotated Currentness
   Part II. Real and Personal Property and Domestic Relations
      Title I. Title to Real Property
         ⌐▣ Chapter 188. Homesteads (Refs & Annos)

+++ CURRENT VERSION +++

VIEW ALL VERSIONS

➡§ 1. Right to acquire homestead;  exemptions;  definitions

<[ Introductory paragraph effective until October 26, 2004.  For text effective October 26, 2004, see below.]>

An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by
an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy
or intend to occupy said home as a principal residence.  Said estate shall be exempt from the laws of conveyance,
descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:

<[ Introductory paragraph as amended by 2004, 218, Sec. 1 effective October 26, 2004.  For text effective until
October 26, 2004, see above.]>

An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by
an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy
or intend to occupy said home as a principal residence.  Said estate shall be exempt from the laws of conveyance,
descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:

(1) sale for taxes;

(2) for a debt contracted prior to the acquisition of said estate of homestead;

(3) for a debt contracted for the purchase of said home;

(4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly
or otherwise for the support of a spouse or minor children;

(5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the
ground rent of the lot whereon they stand;

(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake,
duress, undue influence or lack of capacity.

For the purposes of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

M.G.L.A. 188 § 1

tenant in common; provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | **BANKRUPTCY APPEAL** |
| VITO ANTHONY LAFATA | ) | CIVIL ACTION NO. 05-40010-JLT |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, James M. Liston, hereby do certify that on April 28, 2005, true and correct copies of the Reply Brief of the Appellant, Eastern Savings Bank, fsb filed herewith on behalf of Eastern Savings Bank fsb, were served on the following persons or entities by first class mail, postage prepaid.

Laurel E. Bretta, Esq.
Bretta and Grimaldi, P.A.
19 Mystic Avenue
Medford, MA  02155
(Counsel to Vito Anthony LaFata, Appellee)

Denise M. Pappalardo, Esq.
Chapter 13 Trustee
P.O. Box 01601
Worcester, MA  01601

James M. Liston, Esq.
Bartlett Hackett Feinberg P.C.
10 High Street, Suite 920
Boston, MA  02110
Tel:  (617) 422-0200
Fax:  (617) 422-0383