UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | BANKRUPTCY APPEAL |
| VITO ANTHONY LAFATA | ) | CIVIL ACTION NO. 05-40010-JLT |
| | ) | |
| Debtor | ) | |
| | ) | |

**MOTION TO EXTEND THE TIME FOR FILING THE NOTICE OF APPEAL**

Pursuant to Fed. R. A. P. 4(A)(5), Eastern Savings Bank, fsb ("Eastern") hereby moves that the Court extend the time for filing an appeal to the First Circuit Court of Appeals of the Order of the Court (Tauro, J.), which was dated July 7, 2005, and entered on July 12, 2005, up to and including September 10, 2005.  As grounds for this motion, Eastern states as follows:

The Order entered by this Court affirmed orders of the United States Bankruptcy Court dated December 8, 2004 (Rosenthal, J.).  In the course of depositions taken in a related adversary proceeding, Eastern has discovered material misrepresentations by the Debtor and new facts which are being presented to the Bankruptcy Court in the form of a Motion for Relief under Fed. R. Civ. P. 60 (b)(2), (3) & (6).  A copy of the Motion for Relief is attached as Exhibit "A." Eastern requests extension of time to file its appeal in order to give the Bankruptcy Court an opportunity to retain jurisdiction over these issues so that it may address the Motion for Relief under Rule 60(b).

WHEREFORE, Eastern Savings Bank, fsb ("Eastern") requests that the Court extend the time for filing an appeal of the Order of the Court (Tauro, J.), which was dated July 7, 2005, and entered on July 12, 2005, up to and including September 10, 2005.

Eastern Savings Bank fsb,
By its attorneys,


Thomas M. Looney
BBO #555040
James M. Liston
BBO # 301750
Bartlett Hackett Feinberg P.C.
10 High Street, Suite 920
Boston, MA  02110
617-422-0200

Dated:  July 22, 2005

EXHIBIT A
to
MOTION TO EXTEND THE TIME FOR
FILING THE NOTICE OF APPEAL

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Western Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| VITO A. LAFATA, | ) | CHAPTER 13 |
| | ) | CASE NO. 04-44511-JBR |
| Debtor | ) | |
| | ) | |

## MOTION FOR RELIEF FROM ORDERS

### I. Introduction

Pursuant to Fed. R. Civ. P. 60 (b), the Plaintiff, Eastern Savings Bank fsb ("Eastern"),

hereby moves that the Court vacate the (i) Order on Debtor's Motion for Determination of

Secured Status; (ii) Order on Objection of Eastern Savings Bank, FSB to Confirmation of

Chapter 13 Plan; and (iii) Order on Debtor's Objection to Claim of Eastern Savings Bank, FSB

(collectively, the "Orders"), all of which entered on December 8, 2004.  As grounds for this

motion, Eastern states that the Court's rulings were based upon facts presented by the Debtor

which were materially false and misleading.

As set forth in detail below, the Debtor has repeatedly claimed to be the owner of 31

Enfield Avenue, Methuen, Massachusetts.  The Court in its Memorandum of Decision

specifically found that he was in fact the owner of that lot, which the Court referred to as the

"House Lot."  Through deposition testimony taken in the context of a pending adversary

proceeding, both the Debtor and his ex-wife have testified that the Debtor is not the current

owner of that parcel.  As a result of the Debtor's misrepresentations to this Court, the Orders

entered on December 8, 2004, must be vacated.  Eastern also requests that the Court amend its

1

findings and determine that 31 Enfield Avenue, Methuen, is not property of the Debtor's Estate.

II. Prior Proceedings and Relevant Facts

1.      Vito Anthony Lafata ("Lafata" or "Mr. Lafata") filed his voluntary petition with the Bankruptcy Court commencing his case on August 5, 2004.

2.      On August 18, 2004, Lafata filed his Motion for Determination of Secured Status Under 11 U.S.C. §506; his Objection to Proof of Claim of Eastern Savings Bank, FSB; and his Chapter 13 Plan.

3.      On August 25, 2004, the Bankruptcy Court scheduled a non-evidentiary hearing for October 5, 2004 on Lafata's Objection to Proof of Claim of Eastern Savings Bank, FSB.

4.      On August 27, 2004, Eastern filed its Response by Creditor Eastern Savings Bank FSB to Debtor's Objection to Proof of Claim; its Objection by Creditor Eastern Savings Bank FSB to Debtor's Motion for Determination of Secured Status; and its Objection of Eastern Savings Bank, FSB to Confirmation of Chapter 13 Plan.

5.      In the Schedule of Real Property and other pleadings filed in the Chapter 13 case, Mr. Lafata claimed to be the owner of both 26 Jasper Street and 31 Enfield Avenue.

6.      On Mr. Lafata's Schedule A – Real Property, he describes the property he owns, without qualification, as follows:  "Debtor's residence 26 Jasper Street and 31 Enfield Street, Methuen, Massachusetts adjoining lots residence is on 2 of 3 lots - 3rd lot 500 square feet."

7.      In a pleading dated August 27, 2004, entitled Debtor's Response To Opposition Of The Creditor City Of Methuen To The Motion For Determination Of Secured Status Under 11 U.S.C. §506 ("Debtor's Response"), Mr. Lafata again asserted without qualification that he is the owner of the property at 31 Enfield Avenue. That pleading included the following statement:

2

> The Debtor asserts that his (sic) is the true and rightful owner of said property and appends hereto an executed deed from Gail Ness f/k/a Gail Lafata f/k/a Gail Raulinaitis, Trustee of the Enfield Street Realty Trust, u/d/t dated September 30, 1993 and recorded at the Essex North Registry of Deed as attached hereto.

Copies of the Schedule A and the Debtor's Response referenced above, in which Mr. Lafata claimed ownership of 31 Enfield Avenue, are attached to this motion as Exhibits "A" and "B," respectively.

8.      Contrary to Mr. Lafata's assertions, the Deed by which he claimed ownership of 31 Enfield Avenue (the "Enfield Deed") has never been recorded in the Essex North Registry of Deeds.  See the Affidavit of Counsel submitted with this motion.

9.      On September 3, 2004, the Bankruptcy Court scheduled non-evidentiary hearings for October 5, 2004 on the Objection of Eastern Savings Bank, FSB to Confirmation of Chapter 13 Plan and on Lafata's Motion for Determination of Secured Status Under 11 U.S.C. §506.

10.     On December 8, 2004, this Court entered the Orders which are the subject of this motion. Those Orders were upheld on appeal to the United States District Court for the District of Massachusetts (Tauro, J.).[1]

11.     Eastern commenced an adversary proceeding on January 19, 2005, seeking to reform the mortgage granted to Eastern by Vito Anthony Lafata on 26 Jasper Street, Methuen, Massachusetts, so as to cover all or part of 31 Enfield Avenue to include his entire dwelling.[2]

---

[1] Like this Court, the District Court also was under the misapprehension that Mr. Lafata owned 31 Enfield Avenue. Mr. Lafata's misrepresentations only came to light during recent depositions taken in the adversary proceeding almost at the same time that the District Court issued its decision.

[2] All of the witnesses deposed to date, including Mr. Lafata, agree that all parties intended the Eastern Mortgage to cover 26 Jasper Street and Mr. Lafata's dwelling.  All of the witnesses, including Mr. Lafata, also have testified that at the time of the Eastern Mortgage transaction, all parties mistakenly believed that Mr. Lafata's house was located entirely within the 26 Jasper Street lot.  These undisputed facts justify the entry of summary judgment in the adversary proceeding and Eastern intends to file a motion for summary judgment in the near future.

3

12.     In recent depositions, Vito Anthony Lafata and Gail Ness, f/k/a Gail Lafata ("Mrs.

Lafata"), both testified that Mrs. Lafata currently is the record owner of the property at 31

Enfield Avenue.[3]

13.     After Mr. Lafata's refinancing with Eastern, Mr. Lafata discovered that his house at 26

Jasper Street straddled the lot line between 26 Jasper Street and 31 Enfield Avenue.

14.     Mr. and Mrs. Lafata then negotiated an agreement, through their counsel, in which she

would convey 31 Enfield Avenue to Mr. Lafata in exchange for payment of certain amounts.[4]

15.     The Enfield Deed was then executed by Mrs. Lafata and was sent to Attorney Richard P.

Consoli to be held in escrow pending Mr. Lafata's payment of the amounts owed.  There is no

mention of this escrow arrangement in the Debtor's schedules.[5]

16.     Mr. Lafata never made the required payment under the escrow arrangement.  The Enfield

Deed was never delivered to Mr. Lafata, nor was it recorded in the Essex North Registry of

Deeds.  As a result, Mrs. Lafata remains the fee holder of the Enfield Avenue property.

17.     The original of the Enfield Deed is still being held in escrow by Attorney Consoli.

---

[3] In fact, Mr. LaFata testified that he had never even seen the Enfield Deed before the day of his deposition.  See Vito LaFata deposition at p. 147.  Copies of relevant pages from Mr. LaFata's deposition transcript and Mrs. LaFata's deposition transcript are attached to this motion as Exhibits "C" and "D," respectively.

[4] Mrs. LaFata testified that the amount to be paid by Mr. LaFata was approximately $40,000.  Documents received in discovery from Mrs. LaFata's then counsel indicate that Mr. LaFata was to have paid her $24,217.09 for the Enfield Deed.  By a letter from her counsel dated July 14, 2004, Mrs. LaFata agreed to accept $15,000 in exchange for the Enfield Deed.

[5] It is not clear why Mr. Lafata chose not to inform this Court and the parties about this escrow arrangement.  Whatever the motivation, his failure to provide accurate information resulted in a tactical advantage in the context of his objection to Eastern's secured claim.

4

III.  <u>Argument</u>

A.    LAFATA'S MISREPRESENATIONS CONCERNING THE
      OWNERSHIP OF 31 ENFIELD AVENUE JUSTIFY RELIEF
      <u>FROM THE ORDERS ENTERED ON DECEMBER 8, 2004</u>

*1.  Rule 60(b)(2), (3)&(6) Allows for Relief from Final Orders*

Rule 60(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Court

Rule 9024, allows the Court to relieve a party from a final order under certain circumstances,

including the discovery of new evidence, misrepresentation or other misconduct by an opposing

party, or any other reason that the Court determines is sufficient.  The Rule states, in pertinent

part:

> On motion and upon such terms as are just, the court may relieve a party . . . from
> a final . . . order . . . for the following reasons: . . . (2) newly discovered
> evidence . . .; (3) fraud . . . , misrepresentation, or other misconduct of an adverse
> party; . . . or (6) any other reason justifying relief from the operation of the
> judgment.

Fed. R. Civ. P. 60(b)(2), (3) & (6).

In order to justify relief from a final order under the above-quoted provisions of Rule

60(b), a party must show "something approaching deceit."  <u>See</u> <u>Wayne Manor, Inc. v.</u>

<u>Commonwealth of Massachusetts, Department of Welfare</u>, 117 B.R. 12 (D. Mass. 1990).  "The

Bankruptcy judge needed to find no more than 'misconduct' within the meaning of Rule 60(b)(3)

in order to reconsider his earlier order.  <u>Id.</u>, citing <u>Anderson v. Cryovac</u>, 862 F.2d 910, 923 (1st

Cir.1988).

*2.  Lafata's Material Misrepresentations More Than Justify Relief from the*
*Court's Orders of December 8, 2004.*

Lafata submitted schedules and pleadings in which he unequivocally claimed to be the

current owner of 31 Enfield Avenue.  The interest he claimed in 31 Enfield Avenue throughout

5

this case is that of a "fee."  Contrary to his schedules and his pleadings, Mr. Lafata testified at his

deposition in the reformation case that he does <u>not</u> own 31 Enfield Avenue.  Mr. Lafata testified

as follows:

> 6  Q   Now, earlier today, I thought you told me
> 7        that you did not currently own 31 Enfield
> 8        Street?
> **9  A   I don't.**
> 10  Q   Who owns it?
> **11  A   Gail Ness.**

<u>See</u> Exhibit "C" at p. 137.

Every witness in the adversary proceeding has testified that the Enfield Deed was to be

held in escrow until Mr. Lafata paid Mrs. Lafata amounts still owed in connection with their

divorce.  All of the witnesses have also testified that Mr. Lafata never paid Mrs. Lafata the

amounts due and, as a result, the Enfield Deed was never released from the escrow.  Nowhere in

his schedules, nor in any pleading, has Mr. Lafata ever informed the Court or the creditors that

his interest in 31 Enfield Avenue was subject to any escrow agreement or was qualified in any

way.[6]

Mr. Lafata's misrepresentations concerning his alleged ownership of 31 Enfield Avenue,

particularly in light of the other evidence discovered in the adversary proceeding, intentionally or

unintentionally misled the Court.  In the Orders entered on December 8, 2004, this Court found

as a fact that Mr. Lafata was the owner of both 26 Jasper Street and 31 Enfield Avenue.  The

Court identified 31 Enfield Avenue as the "House Lot."  That finding by the Court (which we

now know was misrepresented by Mr. Lafata) critically influenced the Court's decision.  As a

---

[6] Even if Mr. Lafata had disclosed the existence of the escrow arrangement, he still could not claim any ownership of 31 Enfield Avenue.  Property held in escrow is not considered an asset of the Bankruptcy Estate.  <u>See</u> <u>NTA, LLC v. Concourse Holding Company, LLC</u>, 380 F.3d 523 (1st Cir. 2004).

result of Mr. Lafata's misrepresentations, the Court viewed the Eastern Mortgage as a mortgage

on an unimproved lot with an encroachment from the adjoining "House Lot," when in fact the

Eastern Mortgage is a mortgage on 26 Jasper Street <u>and</u> the house which encroaches on 31

Enfield.  The distinction is critical particularly in light of the evidence supporting the reformation

claim which has been discovered to date.

Mr. Lafata himself testified that he intended the Eastern Mortgage to cover 26 Jasper

Street <u>and</u> Mr. Lafata's house.  Mr. Lafata testified (Exhibit "C" pp. 128 – 129):

```
13      And when you signed the mortgage, you were
14      intending to give them a mortgage on 26
15      Jasper Street, correct?
16  A   Yes.
17  Q   The land, right?
18  A   Uh-huh.
19  Q   And the house, correct?
20          MS. BRETTA:  Objection.
21  A   The building that's on 26 Jasper Street in
22          Lynn, yes.
23  Q    Okay.  And when you say the building that was
1        on 26 Jasper Street, you're talking about the
2        house that you live in, right?
3   A    Right.
```

Linda Cashman of Eastern testified that the bank intended to obtain a mortgage on 26

Jasper Street <u>and</u> Mr. Lafata's house (see Exhibit "E" at pp. 50-51):

```
22  Q   What does that entry mean on that document?
23  A   It means that we have a lien on 26 Jasper Street
24      which encumbers the property and the house, that
1       there is nothing before us, that we are in first
2       lien position and there isn't anything that will
3       jeopardize our first lien position of 26 Jasper.
```

The closing attorney, Richard P. Consoli, recently testified that he intended the Eastern

Mortgage to cover the 26 Jasper Street lot <u>and</u> Mr. Lafata's house.[7]

Mrs. Lafata testified that when she deeded 26 Jasper Street to Mr. Lafata as part of their divorce, she believed that the entire house was located within the 26 Jasper Street lot.  Mrs. Lafata testified (Exhibit "D" p. 48):

```
 6  Q.  When you signed the mortgage -- I showed you part
 7      of it, Exhibit 37 -- you were granted a mortgage
 8      on the house which you owned, believing that the
 9      house was entirely on 26 Jasper Street?
10  A.  Yes.  I never had any reason to believe that
11       these two were connected somehow.
12  Q.  When you sold the house to Mr. LaFata, you sold
13      the house believing --
14  A.  I sold him 26 Jasper Street because that's what I
15      had to sell him.
16  Q.  When you sold him the house, you were selling him
17      the house believing that the entire house was on
18      the 26 Jasper Street lot?
19  A.  Yes.  At no time in my mind did I think that my
20      other house was on it.  I kept that house because
21      of the fact that he owed me money.  I thought I
22      had him.
```

In fact, all of the witnesses, including Mr. Lafata, testified that at the time of the Eastern Mortgage transaction, all parties mistakenly believed that Mr. Lafata's house was located entirely within the 26 Jasper Street lot.  The undisputed evidence, in the form of documents and deposition testimony, establishes that all parties intended the Eastern Mortgage to cover both the Jasper Street lot and the house in which Mr. Lafata was living.  Mr. Lafata's admissions in this regard make his misrepresentations as to his claimed ownership of 31 Enfield Avenue that much more egregious.

Mr. Lafata's misrepresentations to the Court resulted in a reduction of Eastern's secured

---

[7] Attorney Consoli's deposition took place on July 18, 2005, and a transcript is not yet available.  Relevant portions of his deposition testimony will be submitted after the transcript is received.

claim by more than $130,000.  Mr. Lafata should not be rewarded for his misrepresentations and

Rule 60 (b) affords this Court the opportunity to correct the injustice that resulted from Mr.

Lafata's misconduct.

WHEREFORE, Eastern Savings Bank, fsb, moves that the Court vacate the (i) Order on

Debtor's Motion for Determination of Secured Status; (ii) Order on Objection of Eastern Savings

Bank, FSB to Confirmation of Chapter 13 Plan; and (iii) Order on Debtor's Objection to Claim

of Eastern Savings Bank, FSB, all of which entered on December 8, 2004, and grant such other

relief as the Court deems just.

Eastern Savings Bank fsb,
By its attorneys,

Thomas M. Looney
BBO #555040
James M. Liston
BBO # 301750
Bartlett Hackett Feinberg P.C.
10 High Street, Suite 920
Boston, MA  02110
617-422-0200

Dated:  July 22, 2005

**EXHIBIT A**



Form B6 A W (12-95)

**Blumberg**Excelsior, Publisher, NYC 10013

*04-44511*

In re: LaFata, Vito Anthony                    Debtor(s)    Case No.                    (if known)

## SCHEDULE A - REAL PROPERTY

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Debtor's residence 26 Jasper Street and 31 Enfield Street, Methuen, Massachusetts adjoining lots residence is on 2 of 3 lots - 3rd lot 500 sq.ft. | fee | | 262,000.00 | 18,500.00 |
| | | Total -> | 262,000.00 | (Report also on Summary of Schedules) |

FILED IN CLERK'S OFFICE

2004 AUG 18 A 11:51

U.S. BANKRUPTCY COURT WORCESTER, MA

Form B6 B W (11-95)

BlumbergExcelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony                                  Debtor(s)   Case No.                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

| | TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|---|
| 1 | Cash on hand | | cash | | 5.00 |
| 2 | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Methuen Cooperative Bank checking account (average balance) | | 35.00 |
| 3 | Security Deposits with public utilities, telephone companies, landlords and others. | X | | | |
| 4 | Household goods and furnishings including audio, video, and computer equipment. | | used household furniture | | 1,000.00 |
| 5 | Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | used stereo, cds and tapes | | 200.00 |
| 6 | Wearing apparel. | | used men's clothing | | 50.00 |

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules)      Total ->   $

_____X_____ continuation sheets attached



Blumberg's Law Products
Established 1887

**Blumberg**Excelsior, Publisher, NYC 10013

Form B6 B W (11-95)

In re: LaFata, Vito Anthony                    Debtor(s)    Case No.                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 7   Furs and jewelry. | X | | | |
| 8   Firearms and sports, photographic and other hobby equipment. | X | | | |
| 9   Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10  Annuities. Itemize and name each issuer. | X | | | |
| 11  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12  Stock and interest in incorporated and unincorporated businesses. Itemize. | | Debtor is sole proprietor/handyman | | 0.00 |
| 13  Interest in partnerships or joint ventures. Itemize. | X | | | |
| 14  Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 15  Accounts receivable. | | amount owed from son | | 50.00 |
| 16  Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17  Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules)    Total ->    $

_____X_____    continuation sheets attached



Form B6 B W (11-95)

Blumberg Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony                    Debtor(s)   Case No.                (if known)

## SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 18 Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19 Contingent and non-contingent interests in estate of a descendent, death benefit plan, life insurance policy or trust. | X | | | |
| 20 Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor and rights to setoff claims. Give estimated value of each. | X | | | |
| 21 Patents, copyrights, and other general intellectual property. Give particulars. | X | | | |
| 22 Licenses, franchises, and other general intangible. Give particulars. | X | | | |
| 23 Automobiles, trucks, trailers, and other vehicles and accessories. | | 2000 Ford Mustang | | 8,000.00 |
| 24 Boats, motors, and accessories. | X | | | |
| 25 Aircraft and accessories. | X | | | |
| 26 Office equipment, furnishings, and supplies. | X | | | |
| 27 Machinery, fixtures, equipment, and supplies used in business. | | tools of trade and carpenter's tools | | 2,500.00 |

Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules)     Total ->  $

_____X_____  continuation sheets attached



**Form B6 B W (11-95)**

Blumberg Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony

Debtor(s)   Case No.                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 28  Inventory. | X | | | |
| 29  Animals. | | 2 dogs | | 200.00 |
| 30  Crops growing or harvested. Give particulars. | X | | | |
| 31  Farming equipment and implements. | X | | | |
| 32  Farm supplies, chemicals and feed. | X | | | |
| 33  Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | Total -> $ | 12,040.00 |

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules)

_ _ _ _ _ _ _ _ _ _ _ _  continuation sheets attached



Form B6 C W (11-95)                    Blumberg Excelsior, Publisher, NYC  10013

In re: LaFata, Vito Anthony                    Debtor(s)  Case No.                    (if known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under (Check one Box).

☐ 11 U.S.C. § 522(b)(1):  Exemptions provided in 11 U.S.C.§ 522(d).  Note:  These exemptions are available only in certain states.

☑ 11 U.S.C. § 522(b)(2):  Exemptions available under applicable nonbankruptcy federal laws, state or local law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Debtor's residence 26 Jasper Street and 31 Enfield Street, Methuen, Massachusetts adjoining lots residence is on 2 of 3 lots - 3rd lot 500 sq.ft. | MGLA ch. 188, # 1 Homestead or Residential Property | 300,000.00 | 262,000.00 |
| cash | MGLA ch. 235, # 34 Aggregate Value of Cash, Bank Deposits, and Wages | 5.00 | 5.00 |
| Methuen Cooperative Bank checking account (average balance) | MGLA ch. 246, # 28 Bank, or Trust Company Accounts | 35.00 | 35.00 |
| used household furniture | MGLA ch. 235, # 34 Household furniture | 1,000.00 | 1,000.00 |



**Form B6 C W (11-95)**

**Blumberg**Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony                    Debtor(s)   Case No.                    (if known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under (Check one Box).

☐ 11 U.S.C. § 522(b)(1):  Exemptions provided in 11 U.S.C.§ 522(d).  Note:  These exemptions are available only in certain states.

☑ 11 U.S.C. § 522(b)(2):  Exemptions available under applicable nonbankruptcy federal laws, state or local law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| used stereo, cds and tapes | MGLA ch. 235, # 34 Household furniture | 200.00 | 200.00 |
| used men's clothing | MGLA ch. 235, # 34 Wearing Apparel, Beds & Bedding | 50.00 | 50.00 |
| Debtor is sole proprietor/handyman | | 0.00 | 0.00 |
| amount owed from son | MGLA ch. 235, # 34 Aggregate Value of Cash, Bank Deposits, and Wages | 50.00 | 50.00 |



Form B6 C W (11-95)

BlumbergExcelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony                                    Debtor(s)    Case No.                    (if known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under (Check one Box).

☐ 11 U.S.C. § 522(b)(1): Exemptions provided in 11 U.S.C.§ 522(d).  Note:  These exemptions are available only in certain states.

☑ 11 U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal laws, state or local law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| 2000 Ford Mustang | MGLA ch. 235, # 34 Motor Vehicle | 8,000.00 | 8,000.00 |
| tools of trade and carpenter's tools | MGLA ch. 235, # 34 Tools, Implements, and Fixtures for Trade or Business | 2,500.00 | 2,500.00 |
| 2 dogs | MGLA ch. 235, # 34 2 Cows, 12 Sheep, 2 Swine, 4 Tons of hay | 200.00 | 200.00 |



Form B6 D W (11-95)    Blumberg Excelsior, Publisher, NYC 10013

In re LaFata, Vito Anthony                    Debtor(s)    Case No.                    (if known)

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTON AND MARKET VALUE OF PROPERTY SUBJECT OF LIEN | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY | C U D |
|---|---|---|---|---|---|---|
| A/C # Casper LaFata 727 Summer Street Methuen, MA 01844 | | | VALUE $ 8,000.00 automobile | 9,200.00 | 1,200.00 | |
| A/C # Eastern Mortgage Executive Plaza II-Suite 200 11350 McCormick Road Hunt Valley, MD 21031 | | | VALUE $ 35,000.00 first mortgage 26 Jasper Street, Methuen, MA | 150,000.00 | 115,000.00 | |
| A/C # Town of Methuen 41 Pleasant Street Methuen, MA 01844 | | | VALUE $ 262,000.00 This listing includes all accounts of Debtor whether listed or not for this Creditor. | 600.00 | 0.00 | |
| A/C # | | | VALUE $ | | | |
| A/C # | | | VALUE $ | | | |
| A/C # | | | VALUE $ | | | |
| A/C # | | | VALUE $ | | | |

Subtotal ->
(Total of this page)    159,800.00

Total ->
_____ Continuation Sheets attached. (use only on last page of the completed Schedule D.)    159,800.00

*If contingent, enter C; if unliquidated, enter U; if disputed, enter D.        (Report total also on Summary of Schedules)

Form B6 E W (Rev 4/98)

**Blumberg**Excelsior, Publisher, NYC 10013

In re: **LaFata, Vito Anthony**                    Debtor(s)   Case No.                (if known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPE OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☑ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C § 507(a)(2).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees, up to a maximum of $4300 per employee, earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, whichever occured first, to the extent provided in 11 U.S.C. § 507(a)(3)

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occured first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to a maximum of $4300 per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**
Claims of individuals up to a maximum of $1950 for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6)

☐ **Alimony, Maintenance, or Support**
Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(7).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507 (a)(8).

*Amounts are subject to adjustment on April 1, 1998, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**Extension of credit in an involuntary case**

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CO D E B T | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | TOTAL AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | C U D * |
|---|---|---|---|---|---|---|
| A/C # | | | | 1.00 | 0.00 | |
| Division of Emplymt & Training 19 Staniford Street Boston, MA 02114 | | | notice only | | | |
| A/C # | | | | 2,800.00 | 0.00 | |
| Internal Revenue Service Insolvency Unit - Stop 20800 JFK Federal Building 25 New Sudbury St-PO Box 9112 Boston, MA 02203 | | | appealing / disputed | | | |
| A/C # | | | | 1.00 | 0.00 | |
| Massachusetts Dept. of Revenue Bankruptcy Unit P.O. Box 55484 Boston, MA 02205 | | | disputed | | | |

Subtotal -> (Total of this page)    2,802.00

_____ Continuation Sheets attached.

Total -> (use only on last page of the completed Schedule E.)    2,802.00

*If contingent, enter C; if unliquidated, enter U; if disputed, enter D.      (Report total also on Summary of Schedules)

FORM B6F(Official Form6F) (9/97)    Blumberg Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony _____ ,                    Case No. _____
              Debtor                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns).

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>CSI<br>150 Greensboro Avenue<br>Tuscaloosa, AL 35401 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1.00 |
| ACCOUNT NO.<br>Credit Bureau Assoc NE<br>30 Massachusetts Avenue<br>North Andover, MA 01845 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1.00 |
| ACCOUNT NO.<br>Discover Financial Services<br>P. O. Box 15316<br>Wilmington, DE 19850 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 2,680.00 |
| ACCOUNT NO.<br>Fleet National Bank<br>529 Main Street<br>Boston, MA 02129 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1,000.00 |
| ACCOUNT NO.<br>Gail LaFata Ness<br>c/o James M. Bowers, Esquire<br>261 Common Street<br>Lawrence, MA 01840 | | | | | | | 25,000.00 |

|  |  |  |
|---|---|---|
| Subtotal | $ | 28,682.00 |
| Total | $ |  |

___X___ continuation sheets attached.

(Use only on last page of completed Schedule F.)

FORM B6F                    **Blumberg** Excelsior. Publisher. NYC 10013

In re: LaFata, Vito Anthony _____ ,            Case No. _____

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br><br>RC System Inc.<br>P.O. Box 65378<br>Saint Paul, MN 55164 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1.00 |
| ACCOUNT NO.<br><br>Jagruti Patel, DDS<br>439 South Union Street<br>Lawrence, MA 01843 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1,154.00 |
| ACCOUNT NO.<br><br>Oxford Collection Services<br>105 Macess Road, Suite 2A<br>Melville, NY 11747 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1.00 |
| ACCOUNT NO.<br><br>Stephens Business Service<br>176 Church Street<br>Lowell, MA 01852 | | | This listing includes all accounts of Debtor whether listed or not for this Creditor. | | U | D | 1.00 |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

|  |  |  |
|---|---|---|
| Subtotal | $ | 1,157.00 |
| Total | $ | 29,839.00 |

continuation sheets attached.                    (Use only on last page of completed Schedule F.)



Form B6 C W (11 95)

BlumbergExcelsior, Publisher, NYC 10013

In
re:    LaFata, Vito Anthony

Debtor(s)    Case No.                    (if known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST, STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY, STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
|  |  |


Form B6 H W (11-95)

Blumberg Excelsior, Publisher, NYC 10013

In re    LaFata, Vito Anthony

Debtor(s)    Case No.                    (if known)

## SCHEDULE H - CODEBTORS

☑ Check this box if debtor has no codebtors

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
|  |  |

 Form B6 I W (11-95)    **Blumberg**Excelsior, Publisher, NYC 10013

In re:    LaFata, Vito Anthony    Debtor(s)   Case No.    (if known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Debtor's Marital Status | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| | NAMES | AGE | RELATIONSHIP |
| single | | | |

| Employment | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | disabled | |
| Name of Employer | part-time handyman | |
| How long employed | | |
| Address of Employer | | |

Income: (Estimate of average monthly income)

| | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly.) | $ 0.00 | $ 0.00 |
| Estimate monthly overtime | 0.00 | 0.00 |
| SUBTOTAL | $ 0.00 | $ 0.00 |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | 0.00 | 0.00 |
| b. Insurance | 0.00 | 0.00 |
| c. Union dues | 0.00 | 0.00 |
| d. Other (Specify) | 0.00 | |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ 0.00 | $ 0.00 |
| TOTAL NET MONTHLY TAKE HOME PAY | $ 0.00 | $ 0.00 |
| Regular income from operation of business or profession or farm | | |
| (attach detailed statement) | 500.00 | 0.00 |
| Income from real property | 625.00 | 0.00 |
| Interest and dividends | 0.00 | 0.00 |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | 0.00 | 0.00 |
| Social security or other government assistance (Specify) | 0.00 | 0.00 |
| 929.50 debtor | 929.50 | 0.00 |
| fuel assistance | 53.00 | 0.00 |
| Pension or retirement income | 0.00 | 0.00 |
| Other monthly income (Specify) | | |
| child support | 200.00 | 0.00 |
| | 0.00 | 0.00 |
| | 0.00 | 0.00 |
| TOTAL MONTHLY INCOME | $ 2,307.50 | $ 0.00 |

TOTAL COMBINED MONTHLY INCOME    $ 2,307.50    (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:



Form B6 J W (11-95)                    **Blumberg**Excelsior, Publisher, NYC 10013

⊙ LaFata, Vito Anthony                                    Debtor(s)  Case No.                    (if known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse".

| | | |
|---|---|---:|
| Rent or home mortgage payment  (include lot rented for mobile home) | $ | 216.00 |
| Are real estate taxes included?  ☐ Yes  ☑ No    Is property insurance included?    ☐ Yes  ☑ No | | |
| Utilities  Electricity and Heating Fuel | | 120.00 |
| Water and Sewer | | 20.00 |
| Telephone | | 45.00 |
| Other cable | | 48.00 |
| | | 0.00 |
| | | 0.00 |
| Home maintenance (repairs and upkeep) | | 66.00 |
| Food | | 391.00 |
| Clothing | | 50.00 |
| Laundry and dry cleaning | | 27.00 |
| Medical and dental expenses | | 50.00 |
| Transportation (not including car payments) | | 85.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | | 249.00 |
| Charitable contributions | | 20.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
| Homeowner's or renter's | | 50.00 |
| Life | | 0.00 |
| Health | | 0.00 |
| Auto | | 92.00 |
| Other | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify) | | 0.00 |
| | | 0.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan) | $ | |
| Auto | $ | 180.00 |
| Other estimated tax payments | | 207.50 |
| | | 0.00 |
| | | 0.00 |
| Alimony, maintenance, and support paid to others | | 0.00 |
| Payments for support of additional dependents not living at your home | | 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | | 0.00 |
| Other | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ | 1,916.50 |

(FOR CHAPTER 12 AND 13 DEBTORS ONLY)
Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | | |
|---|---|---:|
| A. Total projected monthly income | | 2,307.50 |
| B. Total projected monthly expenses | | 1,916.50 |
| C. Excess income (A minus B) | $ | 391.00 |
| D. Total amount to be paid into plan each  monthly | $ | 391.00 |
| (Interval) | | |



Form B6 Cont. W (11-95)

*Blumberg* Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony

Debtor(s)  Case No.                    (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____ sheets, and
that they are true and correct to the best of my knowledge, information, and belief.     (Total shown on summary page plus 1.)

Date           8/6/04           Signature _____
                                         LaFata, Vito Anthony          Debtor

Date                            Signature _____
                                                    (Joint Debtor, if any)
                                (if joint case, both spouses must sign.)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CERTIFICATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (Sec 11 U.S.C. § 110)

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have
provided the debtor with a copy of this document.

_____            _____
Printed or Typed Name of Bankruptcy Petition Preparer            Social Security Number

_____

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

X _____            _____
Signature of Bankruptcy Petition Preparer            Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines
or imprisonment or both.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the _____ (the president or other officer or an authorized agent of the corporation
or a member or an authorized agent of the partnership) of the _____ (corporation or partnership)
named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of
_____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.
(Total shown on summary page plus 1.)

Date                            Signature _____

                                         (Print or type name of individual signing on behalf of debtor.)

(An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.)

Penalty for making a false statement or concealing property: Fine of up to $500,000 or imprisonment for up to 5 years
or both. 18 U.S.C. § 152 and 3571.



**Form B6 SUM W (11-95)**

Blumberg Excelsior, Publisher, NYC 10013

# UNITED STATES BANKRUPTCY COURT    Eastern DISTRICT OF Massachusetts

In re: LaFata, Vito Anthony

Debtor(s)    Case No.    (if known)

See summary below for the list of schedules. Include Unsworn Declaration under Penalty of Perjury at the end.

GENERAL INSTRUCTIONS: Schedules D, E and F have been designed for the listing of each claim only once. Even when a claim is secured only in part, or entitled to priority only in part, it still should be listed only once. A claim which is secured in whole or in part should be listed on Schedule D only, and a claim which is entitled to priority in whole or in part should be listed in Schedule E only. Do not list the same claim twice. If a creditor has more than one claim, such as claims arising from separate transactions, each claim should be scheduled separately.

Review the specific instructions for each schedule before completing the schedule.

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| Name of Schedule | Attached (Yes/No) | Number of Sheets | Assets | Liabilities | Other |
|---|---|---|---|---|---|
| A - Real Property | X | 1 | 262,000.00 | | |
| B - Personal Property | X | 4 | 12,040.00 | | |
| C - Property Claimed as Exempt | X | 3 | | | |
| D - Creditors Holding Secured Claims | X | 1 | | 159,800.00 | |
| E - Creditors Holding Unsecured Priority Claims | X | 1 | | 2,802.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | X | 2 | | 29,839.00 | |
| G - Executory Contracts and Unexpired Leases | X | 1 | | | |
| H - Codebtors | X | 1 | | | |
| I - Current Income of Individual Debtor(s) | X | 1 | | | 2,307.50 |
| J - Current Expenditures of Individual Debtor(s) | X | 1 | | | 1,916.50 |
| Total Number of Sheets of All Schedules | | 16 | | | |
| Total Assets | | | 274,040.00 | | |
| Total Liabilities | | | | 192,441.00 | |



Form 7W Stmt. of Financial Affairs (12-95)    **Blumberg**Excelsior, Publisher, NYC 10013

## STATEMENT OF FINANCIAL AFFAIRS

### UNITED STATES BANKRUPTCY COURT

Eastern **DISTRICT OF** Massachusetts

In re: LaFata, Vito Anthony

Debtor(s)    Case No.

**STATEMENT OF FINANCIAL AFFAIRS**

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1-18 are to be completed by all debtors. Debtors that are or have been in business within the last 6 years, as defined below, also must complete Que the answer to any question is "None" or the question is not applicable, mark the box labeled "None". If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

**DEFINITIONS**

"In business." A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the two years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or person in control of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

"Insider." The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any person in control of a corporate debtor and their relatives; affiliates or the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. §101(30).

---

NONE

| | **1. INCOME FROM EMPLOYMENT OR OPERATION OF BUSINESS**

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| **AMOUNT** | **SOURCES** |
|---|---|
| 11,850.00 | 2002 net wages |
| 6,100.00 | 2003 net wages |

NONE

| | **2. INCOME OTHER THAN FROM EMPLOYMENT OR OPERATION OF BUSINESS**

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| **AMOUNT** | **SOURCES** |
|---|---|
| 11,148.00 | 2003 social security |
| 7,436.00 | 2004 social security (through 8/2004) |

NONE

| | 3A. PAYMENTS TO CREDITORS

List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

|                                    | DATES OF | AMOUNT | AMOUNT       |
| NAME AND ADDRESS OF CREDITOR       | PAYMENTS | PAID   | STILL OWNING |
| usual and customary monthly        |          |        |              |
| expenses                           |          |        |              |

NONE

|X| 3B. PAYMENTS TO CREDITORS

List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

| | 4A. SUITS AND ADMINISTRATIVE PROCEEDINGS, EXECUTION, GARNISHMENTS AND ATTACHMENTS

List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding bankruptcy case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT    | NATURE OF  | COURT              | STATUS OR   |
| AND CASE NUMBER    | PROCEEDING | AND LOCATION       | DISPOSITION |
| Jagruti Patel v.   | civil      | Lawrence District Ct | judgment  |
| Vito Anthony LaFata |           | 381 Common Street  |             |
|                    |            | Lawrence, MA 01840 |             |

NONE

|X| 4B. SUITS AND ADMINISTRATIVE PROCEEDINGS, EXECUTION, GARNISHMENTS AND ATTACHMENTS

Describe all property that has been attached, garnished, or seized under any legal or equitable process within one year immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| 5. REPOSSESSIONS, FORECLOSURES, AND RETURNS

List all property that has been repossessed by a creditor, sold at foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| **6A. ASSIGNMENTS AND RECEIVERSHIPS**

Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| **6B. ASSIGNMENTS AND RECEIVERSHIPS**

List all property which has been in the hands of a custodian, receiver, or court appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| **7. GIFTS**

List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| **8. LOSSES**

List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

|X| **9. PAYMENTS RELATED TO DEBT COUNSELING OR BANKRUPTCY**

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

NONE

|X| **10. OTHER TRANSFERS**

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

`! | |` **11. CLOSED FINANCIAL ACCOUNTS**

   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, saving, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

July 2004 - checking account
forced closed - negative balance

NONE

`|X|` **12. SAFE DEPOSIT BOX**

   List each safe deposit or other box or depository in which the debt has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

`|X|` **13. SETOFFS**

   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

NONE

`|X|` **14. PROPERTY HELD FOR ANOTHER PERSON**

   List all property owned by another person that the debtor holds or controls.

NONE

`|X|` **15. PRIOR ADDRESS OF DEBTOR**

   If the debtor has moved within two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse

NONE

`|X|` **16. SPOUSES AND FORMER SPOUSES**

   If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the six-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides with the debtor in the community property state.

NONE

|X|  **17A.  ENVIRONMENTAL INFORMATION**

List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law.  Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

NONE

|X|  **17B.  ENVIRONMENTAL INFORMATION**

List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

NONE

|X|  **17C.  ENVIRONMENTAL INFORMATION**

List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party.  Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NONE

|X|  **18A.  NATURE, LOCATION, AND NAME OF BUSINESS**

If the debtor is an individual, list the names, addresses, taxpayer indentification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

NONE

|X|  **18B.  NATURE, LOCATION, AND NAME OF BUSINESS**

Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. Sec. 101.



Unsworn Declaration SFA
W (11-95)

Blumberg Excelsior, Publisher, NYC 10013

In re: LaFata, Vito Anthony

Debtor(s)   Case No.                    (if known)

# DECLARATION CONCERNING DEBTOR'S STATEMENT OF FINANCIAL AFFAIRS

## DECLARATION UNDER PENALTY OF PERJURY

(If completed by an individual or individual and spouse) I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date        8/6/04          Signature _____
                            LaFata, Vito Anthony                    Debtor

Date                        Signature _____
                            (if joint case, both spouses must sign)        (Joint Debtor, if any)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### CERTIFICATION AND SIGNATURE OF NON-ATTORNEY BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____        _____
Printed or Typed Name of Bankruptcy Petition Preparer        Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.

X _____        _____
Signature of Bankruptcy Petition Preparer        Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the _____ (the president or other officer or an authorized agent of the corporation or a member or an authorized agent of the partnership) of the _____ (corporation or partnership) named as debtor in this case, declare under penalty of perjury that I have read the foregoing statement of financial affairs, consisting of _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

_____
Continuation sheets attached

Date                        Signature _____

(Print or type name of individual signing on behalf of debtor.)

(An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.)

### PENALTY FOR MAKING A FALSE STATEMENT OR CONCEALING PROPERTY:
Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. § 152 and 3571.

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

IN RE:                                            )
    VITO ANTHONY LAFATA,          )          CHAPTER 13
        Debtor,                             )          DOCKET NUMBER:
                       )

## CHAPTER 13 AGREEMENT BETWEEN DEBTOR AND COUNSEL
## RIGHTS AND RESPONSIBILITIES OF CHAPTER 13 DEBTORS AND THEIR
## ATTORNEYS

        It is important for debtors who file bankruptcy cases under Chapter 13 to understand their rights and responsibilities.  It is also useful for debtors to know what their attorney's responsibilities are, and understand the importance of communicating with their attorney to make the case successful.  Debtors should also know that they may expect certain services to be performed by their attorney.  To encourage that debtors and their attorneys understand their rights and responsibilities in the bankruptcy process, the following terms are agreed to by the debtors and their attorneys.

BEFORE THE CASE IS FILED:

        The DEBTOR agrees to:

1.    Provide the attorney with accurate financial information; and

2.    Discuss with the attorney the debtor's objectives in filing the case.

        The ATTORNEY agrees to:

1.    Meet with the debtor to review the debtor's debts, assets, income and expenses;

2.    Counsel the debtor regarding the advisability of filing either a Chapter 7 or Chapter 13, discuss both procedures with the debtor and answer the debtor's questions;

3.    Explain what payments will be made through the plan, and what payments will be made directly by the debtor for mortgage and vehicle loan payments, as well as which claims accrue interest;

4.    Explain to the debtor how, when, and where to make the Chapter 13 plan payments, as well as the debtor's obligation to continue making mortgage payments, without interruption, and the likely consequences for failure to do so;

5.  Explain to the debtor how the attorney's fees and trustee's fees are paid, and provide an executed copy of this document to the debtor;

6.  Explain to the debtor that the first plan payment must be made to the Trustee within 30 days of the date the plan is filed;

7.  Advise the debtor of the requirement to attend the 341 Meeting of Creditors, and instruct the debtor as to the date, time and place of the meeting;

8.  Advise the debtor of the necessity of maintaining appropriate insurance on all real estate, motor vehicles and business assets; and

9.  Timely prepare and file the debtor's petition, plan, and schedules.

AFTER THE CASE IS FILED:

The DEBTOR agrees to:

1.  Keep the Trustee and attorney informed for the debtor's address and telephone number;

2.  Inform the attorney of any wage garnishments or attachments of assets which occur or continue after the filing of the case;

3.  Contact the attorney if the debtor loses his/her job or has other financial problems (the attorney may be able to have the Chapter 13 plan payments reduced or suspended in those circumstances), or alternatively obtains a material increase in income or assets;

4.  Advise counsel if the debtor is sued during the case;

5.  Inform the attorney if tax refunds to which the debtor is entitled are seized or not received;

6.  Advise counsel and the Trustee before buying or selling property or before entering into any long-term loan agreements, to determine what approvals are required;

7.  Provide the Trustee and the attorney, prior to Section 341 Meeting of Creditors, with documentary evidence as to debtor's income from all sources and the value of any asset in which the debtor has an interest, together with a copy of any declaration of homestead covering the debtor's real estate, proof of insurance on any real property or automobiles in which the debtor has an interest, and any other documents which the Trustee might reasonably request in order to assess whether the debtor's proposed plan should be confirmed.

The ATTORNEY agrees to provide the following legal services in consideration of the

2

compensation further described below:

1.   Appear at the 341 Meeting of Creditors with the debtor;

2.   Respond to objections to plan confirmation, and where necessary, prepare an amended plan;

3.   Prepare, file, and serve one necessary modification to the plan which may include suspending, lowering, or increasing plan payments;

4.   Prepare, file, and serve necessary amended schedules in accordance with information provided by the debtor;

5.   Prepare, file and serve necessary motions to buy, sell or refinance real property;

6.   Object to improper or invalid claims, if necessary, based upon documentation provided by the debtor;

7.   Represent the debtor in motions for relief from stay;

8.   Where appropriate, prepare, file, and serve necessary motions to avoid liens on real or personal property; and

9.   Provide such other legal services as necessary for the administration of the case.

The initial fees charged in this case are $ _225. /hour_. Any and all additional terms of compensation and additional services agreed to be rendered, if any, are set forth in writing and annexed hereto. If the initial fees are not sufficient to compensate the attorney for the legal services rendered in this case, the attorney further agrees to apply to the Court for additional fees. If the debtor disputes the legal services provided or the fees charged by the attorney, an objection may be filed with the Court and the matter set for hearing.

_____
Debtor signature

Dated: 8.4.04


_____
Co-Debtor signature

Dated:


_____
Attorney for the Debtor(s) signature

Dated: 8/4/04


3

*EXHIBIT 1*

| | |
|---|---|
| COPIES | .10 EACH |
| TELEPHONE: | COST |
| POSTAGE: | COST |
| PARKING | COST |
| TELECOPY: | .50 PER PAGE |

4

CERTIFICATE OF SERVICE

I, Laurel E. Bretta, attorney for the Debtor, Vito Anthony LaFata, hereby certify that a true copy of the foregoing Chapter 13 Agreement Between Debtor and Counsel Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys was served on August 11, 2004 by first class mail, postage prepaid to the following:

Denise Pappalardo, Attorney
Chapter 13 Trustee
P.O. Box 16607
Worcester, Massachusetts 01601

Dated: August 11, 2004



Laurel E. Bretta, Attorney
Bretta & Grimaldi, P.A.
278 Mystic Avenue, Suite 206
Medford, Massachusetts 02155
(781) 395-0090
BBO #547358

5



Blumberg*Excelsior, Publisher, NYC 10013*

3492 Clerk's Notice. W(4-96)

# United States Bankruptcy Court
## NOTICE TO INDIVIDUAL CONSUMER DEBTOR(S)

The purpose of this notice is to acquaint you with the four chapters of the
federal Bankruptcy Code under which you may file a bankruptcy petition. The
bankruptcy law is complicated and not easily described. Therefore, you
should seek the advice of an attorney to learn of your rights and
responsibilities under the law should you decide to file a petition with the
court. Court employees are prohibited from giving you legal advice.

### Chapter 7: Liquidation ($155.00 filing fee plus $30.00 administrative fee plus $15.00 trustee surcharge)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts.

2. Under chapter 7 a trustee takes possession of all your property. You may claim certain of your property as exempt
under governing law. The trustee then liquidates the property and uses the proceeds to pay your creditors according to
priorities of the Bankruptcy Code.

3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to
have committed certain kinds of improper conduct described in the Bankruptcy Code, your discharge may be denied by
the court, and the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a discharge, there are some debts that are not discharged under the law, Therefore, you may
still be responsible for such debts as certain taxes and student loans, alimony and support payments, criminal restitution
and debts for death or personal injury caused by driving while intoxicated from alcohol or drugs.

5. Under certain circumstances you may keep property that you have purchased subject to valid security interest. Your
attorney can explain the options that are available to you.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($155.00 filing fee plus $30.00 administrative fee)

1. Chapter 13 is designed for individuals with regular income who are temporarily unable to pay their debts but would
like to pay them in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed
certain dollar amounts set forth in the Bankruptcy Code.

2. Under chapter 13 you must file a plan with the court to repay your creditors all or part of the money that you owe
them, using your future earnings. Usually, the period allowed by the court to repay your debts is three years, but no more
than five years. Your plan must be approved by the court before it can take effect.

3. Under chapter 13, unlike chapter 7, you may keep all your property, both exempt and non-exempt, as long as you
continue to make payments under the plan.

4. After completion of payments under your plan, your debts are discharged except alimony and support payments,
student loans, certain debts including criminal fines and restitution and debts for death or personal injury caused by driving
while intoxicated from alcohol or drugs, and long term secured obligations.

### Chapter 11: Reorganization ($800.00 filing fee plus $30.00 administrative fee)

Chapter 11 is designed primarily for the reorganization of a business but is also available to consumer debtors. Its
provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an
attorney.

### Chapter 12: Family farmer ($200.00 filing fee)

Chapter 12 is designed to permit family farmers to repay their debts over a period of time from future earnings and is
in many ways similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income
arises primarily from a family owned farm.

I, the debtor, affirm that I have read this notice.

| | | |
|---|---|---|
| 5/6/04 | | |
| Date | Signature of Debtor | Case Number |



3085W Stmt of Comp.:
Rule 2016(b) (12-95)

**Blumberg**Excelsior, Publisher, NYC 10013

# UNITED STATES BANKRUPTCY COURT      Eastern **DISTRICT OF**  Massachusetts

In re: LaFata, Vito Anthony                                    Debtor(s)   Case No.                    (if known)

## STATEMENT
### Pursuant to Rule 2016(b)

The undersigned, pursuant to Rule 2016(b) Bankruptcy Rules, states that:

(1)  The undersigned is the attorney for the debtor(s) in this Case.

(2)  The compensation paid or agreed to be paid by the debtor(s) to the undersigned is:
 (a)  for legal services rendered or to be rendered in contemplation of and in connection
   with this case                                                                                    $      4,000.00
 (b)  prior to filing this statement, debtor(s) have paid                                    $          0.00
 (c)  the unpaid balance due and payable is                                               $      4,000.00

(3)  $              194.00              of the filing fee in this case has been paid.

(4)  The services rendered or to be rendered include the following:
 (a)  analysis of the financial situation, and rendering advice and assistance to the debtor(s) in determining whether to file a
   petition under title 11 of the United States Code.
 (b)  preparation and filing of the petition, schedules, statement of affairs and other documents required by the court.
 (c)  representation of the debtor(s) at the meeting of creditors.
 d      representation in a Motion to Determine Secured Status and claims obj
 e      title issues concerning Stewart Title Co.

(5)  The source of payments made by the debtor(s) to the undersigned was from earnings, wages and compensation for services
 performed, and

(6)  The source of payments made by the debtor(s) to the undersigned for the unpaid balance remaining, if any, will be from
 earnings, wages and compensation for services performed, and

(7)  The undersigned has received no transfer, assignment or pledge of property except the following for the value stated:

(8)  The undersigned has not shared or agreed to share with any other entity, other than with members of undersigned's law firm,
 any compensation paid or to be paid except as follows:

Dated:          8/6/04

Respectfully submitted,  Laurel E. Bretta                         Attorney for Petitioner

**Attorney's name and address**

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MASSACHUSETTS

IN RE:                                  )
    VITO ANTHONY LAFATA,            )        CHAPTER 13
        Debtor                      )        DOCKET NUMBER: 04-44511 JBR
_____)

### DEBTOR'S RESPONSE TO OPPOSITION OF THE CREDITOR CITY OF METHUEN TO THE MOTION FOR DETERMINATION OF SECURED STATUS UNDER 11 U.S.C. §506

NOW COMES the Debtor, Vito Anthony Lafata, and respectfully submits the within Debtor's Response To Opposition Of The Creditor City of Methuen To The Motion For Determination Of Secured Status Under 11 U.S.C. § 506. In support the Debtor states:

1.    The City of Methuen filed an Opposition to the Motion For Determination of Secured Status Under 11 U.S.C. §506 dated on or about August 23, 2004.

2.    The basis of the Opposition is that the Debtor does not hold title to the property located at 31 Enfield Street, Methuen, Massachusetts.

3.    The Debtor asserts that his is the true and rightful owner of said property and appends hereto an executed deed from Gail Ness f/k/a Gail LaFata f/k/a Gail Raulinaitis, Trustee of the Enfield Street Realty Trust, u/d/t dated September 30, 1993 and recorded at the Essex North Registry of Deeds as attached hereto.

WHEREFORE, the Debtor respectfully requests that this Honorable Court overrule the Opposition of the Creditor City of Methuen To The Motion For Determination of Secured Status Under 11 U.S.C. §506 and order any other remedy this Court deems mete and just.

Respectfully submitted,
Vito Anthony LaFata,
By his attorney,

Dated: August 27, 2004

Laurel E. Bretta, Attorney
Bretta & Grimaldi, P.A.
19 Mystic Avenue
Medford, Massachusetts 02155
(781) 395-0090
BBO #547358

1

# EXHIBIT C

 **ORIGINAL**    Vol. 1 - 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Western Division)

IN RE:
VITO A. LAFATA,                        CHAPTER 13
     Debtor.                          CASE NO. 04-44511-JBR
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
EASTERN SAVINGS BANK FSB,
                 Plaintiff,

                             ADVERSARY PROCEEDING
          vs.                         NO. 05-4012

VITO A. LAFATA,
                Defendant.


DEPOSITION OF VITO ANTHONY LAFATA,

taken pursuant to Notice under the applicable

provisions of Rule 30(b) of the Federal Rules

of Civil Procedure on behalf of the Plaintiff,

before Simonne J. Elwood, R.P.R. and a Notary

Public in and for the Commonwealth of

Massachusetts at the office of Bartlett Hackett

Feinberg P.C., 10 High Street, Suite 920,

Boston, Massachusetts, commencing on Wednesday,

June 8, 2005 at 10:23 a.m.

NEAL A. SALLOWAY - COURT REPORTERS
FIVE CARDIGAN ROAD
WEST PEABODY, MA 01960
781-581-3993 - 978-535-0313 - FAX 978-536-3142

Vol. 1 - 74

V. LAFATA

| | | |
|---|---|---|
| 1 | | on 31 Enfield? |
| 2 | A | It was paid off. |
| 3 | Q | So there was a mortgage there at one time? |
| 4 | A | Yes. |
| 5 | Q | And who was that mortgage to? |
| 6 | A | Carvellos (phonetic). |
| 7 | Q | Okay.  So that was the purchase mortgage? |
| 8 | A | Yes. |
| 9 | Q | And at some point, that was paid off? |
| 10 | A | Yes. |
| 11 | Q | And no other mortgages were placed on the |
| 12 | | property as far as you know? |
| 13 | A | No, sir. |
| 14 | Q | What happened to the property at 31 Enfield? |
| 15 | A | Can I ask you what you mean by what happened |
| 16 | | to it? |
| 17 | Q | Sure.  In May of 2001, it was owned by Gail, |
| 18 | | correct? |
| 19 | A | It was always owned by Gail. |
| 20 | Q | Okay.  Who owns it now? |
| 21 | A | Gail LaFata. |
| 22 | Q | Does she -- |
| 23 | A | Excuse me.  Should I address her as Gail |

Vol. 1 - 128

V. LAFATA

1   Q   And was he your lawyer?

2   A   Representing me, yes, he was.

3   Q   And when you signed that mortgage, you

4       understood that you were giving the bank some

5       security in connection with the loan,

6       correct?

7               MS. BRETTA:  Objection.

8   A   Yes.

9   Q   And you knew that if you didn't repay the

10      loan that the mortgage gave the bank certain

11      rights?

12  A   Right.

13  Q   And when you signed the mortgage, you were

14      intending to give them a mortgage on 26

15      Jasper Street, correct?

16  A   Yes.

17  Q   The land, right?

18  A   Uh-huh.

19  Q   And the house, correct?

20              MS. BRETTA:  Objection.

21  A   The building that's on 26 Jasper Street in

22      Lynn, yes.

23  Q   Okay.  And when you say the building that was

Vol. 1 - 129

V. LAFATA

| 1 | | on 26 Jasper Street, you're talking about the |
| 2 | | house that you live in, right? |
| 3 | A | Right. |
| 4 | Q | Okay.  Now I'm going to show you Exhibit 25. |
| 5 | | That's a document called, "Settlement |
| 6 | | Statement."  Do you remember seeing that at |
| 7 | | the closing?  (Indicating) |
| 8 | A | Yes.  Can I? |
| 9 | Q | Take your time. |
| 10 | | (Mr. LaFata and Ms. Bretta confer off |
| 11 | | the record.) |
| 12 | Q | What did you understand that settlement |
| 13 | | statement to be? |
| 14 | A | It was the stuff that I can -- I think all of |
| 15 | | the things that I was supposed to agree to |
| 16 | | and pay for before I get the loan. |
| 17 | Q | Does it show on that settlement statement |
| 18 | | that there was a mortgage that was being paid |
| 19 | | off with some of the loan proceeds? |
| 20 | A | Existing loan from the other bank, from Gail. |
| 21 | Q | Was that Fairbanks Capital, is that right? |
| 22 | A | Yes. |
| 23 | Q | And it shows that Fairbanks Capital is being |

Vol. 1 - 130

V. LAFATA

1          paid $142,000?

2    A    Yes.

3    Q    And you understood that that was happening at

4          the time of the closing, correct?

5    A    Yes.

6    Q    And that was a mortgage that was already on

7          the property at 26 Jasper Street?

8    A    26 Jasper Street, right.

9    Q    Was that a mortgage that you had signed, do

10        you know?

11   A    Yes, sir.

12   Q    Was that a mortgage that -- Was the Fairbanks

13        Capital a mortgage Gail had signed?

14            MS. BRETTA:  Objection.

15   Q    If you know.

16            MS. BRETTA:  I don't understand the

17        question.  He's pointing to a signature on a

18        HUD settlement statement.  You're asking him

19        about a mortgage.

20   Q    Fairbanks Capital had a mortgage on the

21        property, right?

22   A    Yes.

23   Q    Do you know who signed that mortgage?

Vol. 1 - 131

V. LAFATA

```
 1    A    Gail LaFata.  I mean, can I say something?

 2    Q    Sure.

 3              MS. BRETTA:  If it clarifies it.

 4    A    When you say Gail signed the mortgage, it's

 5         like you mean at the closing?

 6    Q    Yes.

 7    A    That she went to a closing and signed it?

 8    Q    Yes.

 9    A    Okay.  She did.

10    Q    Okay.  Let me show you Exhibit 26.

11         (Indicating)

12              MS. BRETTA:  I'm wondering, Tom, is

13         there a way to put all of them in front of

14         him so he can identify his signature and then

15         we can go back to each one of them?

16              MR. LOONEY:  I'd rather do it this

17         way, I think.

18              MS. BRETTA:  Okay.

19    Q    I'm going to be asking you --

20              MR. LOONEY:  I'm not going to show him

21         and -- I'm not just going to ask about his

22         signature.  I've got at least one question on

23         each thing.
```

Vol. 1 - 132

V. LAFATA

1              MS. BRETTA:  Okay.

2      Q      Do you remember signing that document at the
3              closing?

4      A      Yes, I do.

5      Q      And does it indicate in that document that
6              you're telling the bank that you live at 26
7              Jasper Street?

8      A      Yes.

9      Q      Okay.  And that was correct at the time,
10             right, you were living in the house?

11     A      Yes.  I had a mortgage for it.

12     Q      I'm going to show you Exhibit 27 and ask you
13             if that's your signature on that document?
14             (Indicating)

15     A      Yes, it is.

16     Q      Can you look at Paragraph No. 5 and just read
17             that slowly out loud if you can?

18     A      No. 5.  "That the undersigned know(s) of no
19             violations of municipal ordinances pertaining
20             to the above described property."

21     Q      Did you read that document before you signed
22             it?

23     A      I read and signed it, yes.

Vol. 1 - 133

V. LAFATA

```
 1    Q    So you knew when you signed that that you
 2         were indicating and you were swearing under
 3         oath that you didn't know of any violation of
 4         any municipal ordinances on the property,
 5         correct?
 6              MS. BRETTA:  Objection.  You can
 7         answer.
 8    A    What do you mean by municipal ordinances and
 9         all that stuff?
10    Q    I'm just reading from this.  That's what
11         you're saying in this affidavit, correct?
12              MS. BRETTA:  Objection.
13    A    Yes.
14    Q    And at the time -- I think you testified
15         earlier, at the time, you didn't have any
16         understanding that the house was straddling
17         the property line?
18    A    No.
19    Q    I'm going to show you Exhibit 29, and I'm
20         going to ask you if you have ever seen that
21         before today?  (Indicating)
22    A    (Reviewing document)
23    Q    Do you remember seeing that at the time of
```

Vol. 1 - 134

V. LAFATA

| 1 | | the closing? |
|---|---|---|
| 2 | A | Yes. |
| 3 | Q | And you understood that that was a statement |
| 4 | | from Fairbanks Capital telling how much was |
| 5 | | owed on their loan? |
| 6 | A | Yes. |
| 7 | Q | Okay.  And do you know whether that loan was |
| 8 | | paid off; in fact, was paid off? |
| 9 | A | Yes. |
| 10 | Q | Now, this one, I'm just going to ask you if |
| 11 | | that's your signature on it.  It's Exhibit |
| 12 | | 28.  (Indicating) |
| 13 | A | Yes. |
| 14 | Q | Okay.  If you take a look at Exhibit 30, |
| 15 | | that's called a, "Declaration of Homestead." |
| 16 | | (Indicating) |
| 17 | A | Right. |
| 18 | Q | Is that a document that Attorney Consoli |
| 19 | | prepared? |
| 20 | A | For 26 Jasper Street, yes. |
| 21 | Q | Okay.  And did you sign that at the time of |
| 22 | | the closing? |
| 23 | A | Yes, I did. |

Vol. 1 - 135

V. LAFATA

1    Q    Okay.  And Mr. Consoli was representing you

2          at the time?

3    A    Yes.

4          MS. BRETTA:  Just for the record,

5          Exhibit 30 doesn't have Attorney Consoli's

6          notary on it, and it's undated.

7    Q    Is that your signature on that document?

8    A    Yes.

9    Q    I'm going to show you now Exhibit 32 which is

10         a document that was filed --

11         MS. BRETTA:  Let me just ask you:  Did

12         you skip 31?

13         MR. LOONEY:  I've got it here.  I'm

14         going to get it back to it.  Sorry about

15         that.

16         MS. BRETTA:  Okay.

17    Q    Take as much time as you want to look at it.

18         Actually, I'm going to take it back for a

19         second, and I want to direct your attention

20         to some things.

21         I'm going to take that back for a

22         second.

23         Would you take a look at Schedule A,

Vol. 1 - 136

V. LAFATA

```
 1              real property.  Can you tell me -- read for
 2              me the description of the property that's
 3              listed?
 4     A        31 Enfield and adjoining lots on 2 and 3.
 5     Q        Okay.  So it references -- It says, "Debtor's
 6              residence 26 Jasper Street and 31 Enfield
 7              Street, Methuen, Massachusetts adjoining lots
 8              residence is on 2 of 3 lots - 3rd lot 500
 9              square feet."  Is that what it says?
10              (Indicating)
11     A        That's what it says.
12     Q        Okay.  And do you understand that to be a
13              document that was filed in your bankruptcy
14              case?
15     A        I don't understand what you're saying.
16     Q        Was that something that was filed on your
17              behalf in the present bankruptcy case, the
18              pending bankruptcy case?
19     A        Yeah.  Yes.
20     Q        Does your signature appear in the back of
21              that document?
22     A        Yep.  Yes.
23     Q        And by signing that document, you're swearing
```

Vol. 1 - 137

V. LAFATA

| | | |
|---|---|---|
| 1 | | to the accuracy of it? |
| 2 | A | Yes. |
| 3 | Q | And the truth of the information contained in |
| 4 | | there? |
| 5 | A | Yes. |
| 6 | Q | Now, earlier today, I thought you told me |
| 7 | | that you did not currently own 31 Enfield |
| 8 | | Street? |
| 9 | A | I don't. |
| 10 | Q | Who owns it? |
| 11 | A | Gail Ness. |
| 12 | | MS. BRETTA:  I'm going to object to |
| 13 | | this line of questioning because the question |
| 14 | | is description of real property.  It doesn't |
| 15 | | have to have an actual ownership.  It's |
| 16 | | whether you have an interest in the property. |
| 17 | | MR. LOONEY:  Okay. |
| 18 | | MS. BRETTA:  He's never taken the |
| 19 | | position that he doesn't have an interest in |
| 20 | | 31 Enfield Street. |
| 21 | | MR. LOONEY:  Okay. |
| 22 | Q | What is your interest in 31 Enfield Street? |
| 23 | | MS. BRETTA:  Objection. |

Vol. 1 - 138

V. LAFATA

| | | |
|---|---|---|
| 1 | A | What do you mean? |
| 2 | Q | What interest do you have in 31 Enfield |
| 3 | | Street? |
| 4 | A | Well, knowing that when I do get it, I'd like |
| 5 | | to build a house and pay off the other |
| 6 | | mortgage that I have. |
| 7 | Q | When do you intend getting 31 Enfield Street? |
| 8 | A | When everything is straightened out. |
| 9 | Q | And how will that happen? |
| 10 | A | I don't know. |
| 11 | Q | Do you have an agreement with Gail Ness to |
| 12 | | acquire 31 Enfield Street? |
| 13 | | MS. BRETTA:  Okay. |
| 14 | A | If I pay her off. |
| 15 | Q | And how much would that be? |
| 16 | A | I haven't seen what, you know, what I owe |
| 17 | | yet. |
| 18 | Q | And when you say -- |
| 19 | A | It's like 25 -- I mean, my talking.  Sorry. |
| 20 | | That if we come to an agreement as to how |
| 21 | | much it's really worth. |
| 22 | Q | Okay.  Have you had discussions with her |
| 23 | | about how much it's worth? |

Vol. 1 - 139

V. LAFATA

| 1 | A | They have the opinion and knowledge it to be |
| 2 | | worth more. |
| 3 | Q | Well, when did you first have a discussion |
| 4 | | with Gail as to how much that property at 31 |
| 5 | | Enfield is worth? |
| 6 | A | I really don't know dates.  Sorry. |
| 7 | Q | Okay.  Was it before the divorce or after the |
| 8 | | divorce? |
| 9 | A | It was before when she told me that I can |
| 10 | | take 26 Jasper Street, to buy that and get |
| 11 | | that all done and over with; and later on |
| 12 | | down the line, the other separate property, |
| 13 | | 31 Enfield. |
| 14 | Q | And what did she say was the value of that |
| 15 | | property? |
| 16 | A | At that time, it was like $25,000, $30,000. |
| 17 | Q | And what time frame was that, give me a ball |
| 18 | | park on the year? |
| 19 | A | Maybe, and this is approximately, and I don't |
| 20 | | know exactly.  I'm just giving, maybe, 2003, |
| 21 | | roughly, around there.  I don't know exactly. |
| 22 | Q | Okay. |
| 23 | A | Sorry. |

Vol. 1 - 140

V. LAFATA

| | | |
|---|---|---|
| 1 | Q | And have you had any other discussions with |
| 2 | | Gail since then about what the value of the |
| 3 | | property is? |
| 4 | A | No. |
| 5 | Q | So the only discussion you had with Gail -- |
| 6 | A | I mean, I had a couple of discussions with |
| 7 | | her about the property, but I just don't |
| 8 | | remember exactly what I said to her because, |
| 9 | | again, you know, I really don't like talking |
| 10 | | to her, and I try to keep it short; but, you |
| 11 | | know, sometimes -- and things I say is like |
| 12 | | anger, you know, like, okay, whatever, |
| 13 | | whatever, and that's it. |
| 14 | Q | And what -- Why did you even have a |
| 15 | | discussion with her about buying 31 Enfield |
| 16 | | Street?  How did that come up? |
| 17 | A | What do you mean how did it come up? |
| 18 | Q | Why were you even talking about it?  Why was |
| 19 | | she interested in selling it to you? |
| 20 | A | I wanted to buy it later on if everything is |
| 21 | | going good for me, build a house there and |
| 22 | | maybe turn around and sell it and pay off the |
| 23 | | one I have. |

Vol. 1 - 141

V. LAFATA

```
 1     Q     And did she express interest in selling it to
 2           you; did she want to sell it to you?
 3     A     Yes.
 4     Q     And when she said it was worth $20,000 or
 5           $25,000, --
 6     A     At that time.
 7     Q     At that time, what did you say?
 8     A     I said, "Fine."
 9     Q     And then what happened?
10     A     That was -- It was never -- Never came up
11           again, and it was like it was in a realty
12           trust, and we couldn't touch it.
13     Q     When was the next discussion you had with her
14           about the property at 31 Enfield?
15     A     That was it, I guess.
16     Q     And you say you thought it was worth -- both
17           you and she thought it was worth $20,000,
18           $25,000 in 2003, is that right?
19     A     At that time, 2002, I think it was.  When I
20           got that house, we talked about it.  I think
21           in 2002, 2003, in that period.
22     Q     Okay.  And did you have any discussions after
23           that about the value of the property at 31
```

Vol. 1 - 142

V. LAFATA

| | | |
|---|---|---|
| 1 | | Enfield? |
| 2 | A | Here and there, not major, you know, nothing, |
| 3 | | really not much, no. |
| 4 | Q | Did you have any discussion with her about |
| 5 | | the value of 31 Enfield Street other than |
| 6 | | that one discussion you told me about? |
| 7 | A | No. |
| 8 | Q | You mentioned that you thought it was worth |
| 9 | | $20,000, $25,000 at that time.  Do you have |
| 10 | | an opinion as to the value of it now? |
| 11 | | MS. BRETTA:  Objection.  If you think |
| 12 | | you have an opinion, -- |
| 13 | A | How much do I think it's worth today? |
| 14 | | MS. BRETTA:  I'm going to object, and |
| 15 | | just so you will understand the objection, I |
| 16 | | object to the question; but if you can answer |
| 17 | | it, you can answer it. |
| 18 | A | Could you repeat that? |
| 19 | Q | Sure.  When I asked you about the value, you |
| 20 | | said, "At that time," meaning 2002, 2003, you |
| 21 | | talked with Gail about it being worth $20,000 |
| 22 | | to $25,000. |
| 23 | A | I don't know. |

Vol. 1 - 143

V. LAFATA

```
 1    Q    You said, as part of that answer, I believe
 2         you said something like, "It's worth more
 3         now."?
 4    A    Uh huh.
 5    Q    So I'm going to ask you:  What do you think
 6         it's worth now, and why is the value any
 7         different than it was in 2002, 2003?
 8              MS. BRETTA:  Same objection.
 9    A    But I really don't know exact because I'm not
10         an appraiser.  I'm not a real estate agent
11         and things like that and just the way, you
12         know, real estate has risen over the years,
13         you know, I mean, things have gone up.
14    Q    Okay.  So just simply your -- That's fine.
15              So I just want to make sure I
16         understand clearly.  You had one discussion
17         with Gail about the value of 31 Enfield
18         Street?
19    A    Uh-huh.
20    Q    You remembered one when you talked about
21         $20,000, $25,000.  Was there any other
22         discussion you had with her where you talked
23         about 31 Enfield?
```

Vol. 1 - 144

V. LAFATA

1   A   Maybe I have.  I don't recall.  I mean, most
2       of that stuff was between her and the lawyer
3       and my lawyer, all three of them talking
4       about it, and sometimes we just didn't get
5       along, and we didn't talk about it.  Maybe I
6       have.  Maybe I forgot something.  Again, you
7       know, I mean, I can't --
8   Q   Okay.  That's fine.  Can you tell me the
9       names of all the lawyers that were involved
10      in any discussion about 31 Enfield Street?
11  A   Do you have a Yellow Book?
12  Q   Was Dick Consoli involved in that?
13  A   Yes.
14  Q   Was Attorney Bowers involved in that?
15  A   Yes.
16  Q   Any others lawyers?
17  A   This.  (Indicating)
18  Q   Ms. Bretta?
19  A   Yes.
20  Q   Anyone else?
21  A   I can't think of anybody.
22  Q   And did you feel that it was required, as
23      part of the divorce, that Gail deed you the

Vol. 1 - 145

V. LAFATA

```
 1              property at 31 Enfield Street?
 2                   MS. BRETTA:  Objection.  You can
 3              answer it.
 4      A       Can you --
 5      Q       I'm going to ask you again.
 6                   MS. BRETTA:  I'm just going to renew
 7              my objection so I don't have to interrupt
 8              you.
 9                   MR. LOONEY:  That's fine.
10      Q       Do you believe that Gail was required to deed
11              you the property at 31 Enfield Street as part
12              of the divorce?
13      A       It was the realty trust, and I don't think
14              anybody could touch it.  She didn't think so.
15      Q       Do you know who the trustee was of the realty
16              trust?
17      A       Enfield Realty Trust.
18      Q       Do you know who the trustee was?
19      A       Gail Raulinaitis.
20      Q       Do you know who the beneficiary was?
21      A       No.
22      Q       Did you ever see a schedule of beneficiaries?
23      A       No.
```

Vol. 1 - 146

V. LAFATA

1    Q    But Gail told you that she couldn't deed the

2          property?

3               MS. BRETTA:  Objection.  That's not

4          what he said.

5    Q    Well, I'll ask you that.

6    A    I didn't say that.

7    Q    I'll ask you that.  Why did you feel that --

8          You did say that you believed the property

9          was in a realty trust, --

10    A    Right.

11    Q    -- and it couldn't be touched.

12    A    Right.

13    Q    Why did you have that understanding?

14    A    I thought -- I mean, I was understanding

15          because I owned a piece of property at one

16          time, and I tried to sell it, and it was

17          under my name, and one lawyer told me, "You

18          can't touch it."  I'm just going with, you

19          know, what they told me at one time.

20    Q    But did anybody tell you that in connection

21          with this particular property at 31 Enfield

22          Street?

23    A    Like I said, no.  No.

Vol. 1 - 147

V. LAFATA

| | | |
|---|---|---|
| 1 | Q | Okay.  Now I'm going to show you a document |
| 2 | | that was marked as Exhibit 31.  (Indicating) |
| 3 | A | (Reviewing document)  Okay. |
| 4 | Q | What is that document called? |
| 5 | A | It's called a quitclaim deed. |
| 6 | Q | Do you know what it is? |
| 7 | A | I think -- I mean, I'm not going to think. |
| 8 | | It's like a deed from one person to the next. |
| 9 | Q | Okay.  What property does it relate to? |
| 10 | A | 31 Enfield. |
| 11 | Q | Okay.  Who is it from, and who is it to? |
| 12 | A | Gail LaFata. |
| 13 | Q | Is it from Gail LaFata?  To whom? |
| 14 | A | Oh, I'm sorry.  There's so many names here. |
| 15 | | Read all the names or -- Gail Ness to Anthony |
| 16 | | LaFata. |
| 17 | Q | Okay.  What's the date of that deed? |
| 18 | A | The date of that deed is June 2004. |
| 19 | Q | Have you ever seen that document before |
| 20 | | today? |
| 21 | A | Nope. |
| 22 | Q | You've never seen that before? |
| 23 | A | Nope.  I did not see it. |

Vol. 1 - 148

V. LAFATA

1   Q   Okay.  Do you have any idea where the
2       original of this document is?
3   A   Nope.  I do not know.
4   Q   If you take a look at it, did Gail LaFata
5       ever indicate to you that she was going to
6       sign a deed of 31 Enfield Street over to you?
7           MS. BRETTA:  Objection.
8   A   Again, at the time, we weren't on no
9       talking -- speaking terms, and it was between
10      the lawyers.
11  Q   Did you ever -- Before today, have you ever
12      understood that that particular document
13      existed?
14  A   I kind of knew that she was doing something,
15      but I never knew until she -- you know, I
16      never had it in my hands.
17  Q   How did you know she was doing it?
18          MS. BRETTA:  I'm going to object.  If
19      the conversation you had was with any lawyer
20      that was representing you at the time, I
21      don't want you to talk about that.
22  Q   I don't want you to tell me what was said
23      between you and the lawyer.  I do want to

Vol. 1 - 149

V. LAFATA

| | | |
|---|---|---|
| 1 | | know, though, if the existence of that |
| 2 | | document was made aware to you by a lawyer? |
| 3 | | I don't want to know what was said.  Do you |
| 4 | | understand what I mean? |
| 5 | A | No, I don't.  The only thing is that it's |
| 6 | | between them three, and that was it. |
| 7 | Q | Okay.  But at some point, you became aware |
| 8 | | that Gail was going to sign a deed of 31 |
| 9 | | Enfield Street over to you? |
| 10 | A | Right.  But I've never got the deed in my |
| 11 | | possession. |
| 12 | Q | Okay.  Any idea why? |
| 13 | A | Nope. |
| 14 | Q | Do you have any idea whether the deed was |
| 15 | | ever sent to your attorney? |
| 16 | A | Again, it's between them three.  I don't know |
| 17 | | what happened between all three of them. |
| 18 | Q | Do you believe that the original of that deed |
| 19 | | is with one of the attorneys somewhere? |
| 20 | A | Yeah. |
| 21 | Q | Do you have any idea why that deed was |
| 22 | | created and signed? |
| 23 | A | I have no idea. |

Vol. 1 - 150

V. LAFATA

1    Q    Were there any negotiations going on that
2         would include the transfer of that property
3         to you?
4    A    Transferred to me?
5    Q    Yes.
6    A    Between Gail, Mr. Bowers and Mr. Consoli,
7         they all had a say in it, all three of them,
8         and I understood it was a deed that was going
9         to me -- I mean, coming to me, and that was
10        it.  That's all I know.
11   Q    Okay.  If you look at the paragraph that
12        begins, "For consideration --," do you
13        understand that in a deed when it talks about
14        the consideration, it's talking about what's
15        being paid for the property, what's being
16        given in exchange for the property?
17   A    I don't understand what you're saying.
18   Q    Well, if you read that paragraph, does it
19        tell you anything as to why that deed was
20        created or why it was -- why the property was
21        being transferred to you?
22   A    No.
23   Q    It says on the deed, "For consideration under

Vol. 1 - 151

V. LAFATA

1            the terms and conditions as stated in the
2            Separation Agreement of Gail LaFata and
3            Anthony LaFata, dated May 31, 2001, --."
4            Do you see where that's written?
5    A       Uh-huh.
6    Q       Was the transfer of 31 Enfield Street to you
7            required by the terms and conditions of the
8            separation agreement?
9                    MS. BRETTA:  Objection.
10   A       I don't really quite understand what you're
11           saying to me.
12   Q       Well, it says on here --
13   A       I know what it says there, but I just don't
14           understand it.
15   Q       You don't understand it.  Okay.  Let me ask
16           you a different question.
17                   Did you think that, as part of the
18           divorce, you were supposed to be deeded 31
19           Enfield Street --
20                   MS. BRETTA:  Objection.
21   Q       -- as well as 26 Jasper Street?
22   A       No.
23   Q       Do you anticipate acquiring 31 Enfield

Vol. 1 - 152

V. LAFATA

| | | |
|---|---|---|
| 1 | | Street? |
| 2 | | MS. BRETTA:  Objection.  You can |
| 3 | | answer. |
| 4 | Q | You can answer. |
| 5 | A | At some point, yes. |
| 6 | Q | Do you believe that Gail Ness has any |
| 7 | | obligation at this point to transfer that |
| 8 | | property to you at 31 Enfield Street? |
| 9 | | MS. BRETTA:  Objection. |
| 10 | A | Can you tell me another way? |
| 11 | Q | Yes.  Do you think it's her obligation to |
| 12 | | deed you that property? |
| 13 | A | Yeah.  Yes.  Sorry. |
| 14 | Q | Okay. |
| 15 | | MR. LOONEY:  Let's take -- If we could |
| 16 | | just take a few-minutes' break. |
| 17 | | (Break takes place at 2:09 p.m.) |
| 18 | | (Back on the record at 2:17 p.m.) |
| 19 | | MR. LOONEY:  I have no further |
| 20 | | questions. |
| 21 | | |
| 22 | | CROSS EXAMINATION |
| 23 | Q | (By Ms. Bretta)  Mr. LaFata, you were shown a |

Vol. 1 - 153

V. LAFATA

| | | |
|---|---|---|
| 1 | | copy of a deed that appears to have been |
| 2 | | signed by Gail Ness that was marked Exhibit |
| 3 | | 31. |
| 4 | A | Yes. |
| 5 | Q | You were also asked whether you thought that |
| 6 | | Gail Ness had an obligation to give you the |
| 7 | | property at 31 Enfield Street.  Could you |
| 8 | | describe for me what you understood the word, |
| 9 | | "obligation," to mean when Attorney Looney |
| 10 | | used it in that context? |
| 11 | A | I thought it meant that after that, after I |
| 12 | | paid Gail what I owed her for the property, |
| 13 | | that she's obligated to give me the property |
| 14 | | on 31 Enfield after I'm done paying her what |
| 15 | | I owe her on it. |
| 16 | Q | And to just make it clear, you testified |
| 17 | | earlier that it was your understanding that |
| 18 | | the separation agreement did not provide for |
| 19 | | Gail Ness to be required to give you the |
| 20 | | property at 31 Enfield Street, is that |
| 21 | | correct? |
| 22 | A | Yes. |
| 23 | Q | And, in fact, in the quitclaim deed that was |

Vol. 1 - 154

V. LAFATA

```
 1              marked as Exhibit 1, that deed actually sits
 2              in the name of a trust by the name of Enfield
 3              Street Realty Trust, is that correct?
 4      A       Yes.
 5      Q       And you have no interest in the Enfield
 6              Realty Trust, correct?
 7      A       No, I don't.
 8                  MS. BRETTA:  I have no further
 9              questions.
10                  MR. LOONEY:  I just want to follow up
11              on one.
12
13              REDIRECT EXAMINATION
14      Q       (By Mr. Looney)  You said that you think that
15              Gail should deed you the property at 31
16              Enfield Street after you pay her what you owe
17              her for the property.
18      A       Uh-huh.
19      Q       How much do you owe her for the property?
20      A       To be determined how much the property is
21              worth.
22      Q       Okay.
23                  MR. LOONEY:  That's all I have.
```

# EXHIBIT D

1

1                                              Pages:  56
                                             Volume:   1
2                                            Exhibits:  3

3                    COMMONWEALTH OF MASSACHUSETTS

4       IN RE:
        VITO A. LAFATA      C.A. No. 04-44511-JBR
5       - - - - - - - - - - - - - - - - - - - - - - - - - -
        EASTERN SAVINGS BANK FSB,
6                                       Plaintiff,

7                          v.

8       VITO A. LAFATA,
                                        Defendant.
9       - - - - - - - - - - - - - - - - - - - - - - - - - -

10

11          DEPOSITION OF GAIL NESS, taken pursuant to
        Notice under the applicable provisions of the
12      Massachusetts Rules of Civil Procedure, on behalf
        of the Plaintiff, before Cheryl P. Burns,
13      Professional Court Reporter and Notary Public in
        and for the Commonwealth of Massachusetts, at the
14      LAWRENCE SUPERIOR COURT, 43 Appleton Street,
        Lawrence, MA 01840, on Thursday, June 30, 2005,
15      commencing at 10:00 a.m.

16

17

18

19

20

21

22

23                                        ORIGINAL

|   |   |   |
|---|---|---|
| 1 |   | this, you're probably not going to get your |
| 2 |   | money."  And we know that we're due my money and |
| 3 |   | that's when he wrote up a statement.  I said, "Is |
| 4 |   | there any way that you could protect me?"  And he |
| 5 |   | said we'll write up something to Mr. Consoli that |
| 6 |   | would state that if he sells both pieces of |
| 7 |   | property, I would get my money. |
| 8 | Q. | How much were you owed? |
| 9 | A. | I believe almost 40,000. |
| 10 | Q. | What was that for? |
| 11 | A. | It was for past bills, things that didn't get |
| 12 |   | paid that are under my credit right now, which is |
| 13 |   | really killing me because I'm getting a divorce |
| 14 |   | right now, again, thanks to all the circumstances |
| 15 |   | that I'm going through that I can't seem to get |
| 16 |   | rid of.  And right now, I'm trying to get a place |
| 17 |   | for me and my daughter.  And right now, because |
| 18 |   | of my situation for me and my credit, I'm having |
| 19 |   | a real hard time even getting a place because all |
| 20 |   | this stuff is coming back to haunt me.  They are |
| 21 |   | like, "You own this, you own that."  The bank |
| 22 |   | owned it.  I owned nothing.  You know what I'm |
| 23 |   | saying?  Because I'm really -- I'm sitting here |

1       and I'm looking at all these documents and they

2       look so pretty and everything, but I never really

3       owned everything, if you really want to get down

4       to it.

5   Q.  Because of mortgages on the property?

6   A.  Yes, of course.

7   Q.  When you granted the mortgages on the property,

8       you believed you were giving them the mortgage on

9       the lot on 26 Jasper Street --

10  A.  I've always believed -- I can honestly -- if you

11      want to get down to the nitty-gritty here, I was

12      told or I was under the assumption -- this is

13      what I only know from the truth of my heart, I

14      owned Jasper Street and I owned Enfield Avenue.

15      They were two different properties.  I was never

16      told that they weren't until the very end when

17      things started to happen and things were tangled

18      or whatnot.  And that may have been because of

19      the way things were back in the '60s or whatever;

20      it was grandfathered, it was this, it was that.

21      I didn't understand all those terms.  I didn't

22      understand them.

23          But like I told you, when I built this

1        house and when Sam Ciraldi came to build a house

2        for me, he built it on Jasper Street.  And 31

3        Enfield Avenue was never to be touched because I

4        didn't want him to touch it.  It had running

5        water, it had everything -- you know what I mean,

6        to my standards.  If my mother ever saw me living

7        in there, she would probably kill me.  But I'm

8        just saying it was running water, I could have

9        scrubbed it, I could have done whatever.  But

10       like I told you, I wanted this house to be built

11       and I wanted to have this for my son or my

12       daughter.  And Mr. Privitera came down and said

13       this would benefit you.  And at the time he

14       bought this.

15            And like I said, things arose, we were

16       having problems and I decided to divorce.  We had

17       to sell this piece of property, which was

18       27 Enfield that he only owned himself.  And he

19       was very bitter because he told me he wanted it

20       for himself and I said, "Tough cazoos, because if

21       you're not going to get rid of this house and

22       something is going to get paid" -- "because I'm

23       not going to walk out of this marriage with you

1      having three pieces of property and me going into

2      a tent." And he did, he sold one piece of

3      property -- whoop to doo -- and maybe got rid of

4      two bills. I mean, like I said, this is me. I

5      got screwed.

6  Q.  When you signed the mortgage -- I showed you part

7      of it, Exhibit 37 -- you were granted a mortgage

8      on the house which you owned, believing that the

9      house was entirely on 26 Jasper Street?

10  A.  Yes. I never had any reason to believe that

11      these two were connected somehow.

12  Q.  When you sold the house to Mr. LaFata, you sold

13      the house believing --

14  A.  I sold him 26 Jasper Street because that's what I

15      had to sell him.

16  Q.  When you sold him the house, you were selling him

17      the house believing that the entire house was on

18      the 26 Jasper Street lot?

19  A.  Yes. At no time in my mind did I think that my

20      other house was on it. I kept that house because

21      of the fact that he owed me money. I thought I

22      had him.

23  Q.  Then you sign the deed, that's Exhibit 31,

1        because you were fed up --

2    A.   One day I got a call and said, "You know what,

3        there is a little bit of a mess here," and I

4        said, "Where do I sign?"  I'm sorry, but I'm

5        smarter for what I've done.  I'll never get

6        married again.  I'll never let anybody screw me

7        again.  I'm done.

8    Q.   And the last time you saw that document was in

9        Mr. Bower's office?

10   A.   He said, "Gail, this is what you have to do.  I'm

11       not happy with it, but this is what you got to

12       do."  He said, "If you want to get rid of him" --

13       I signed it.  And I'm still owed money.

14          MR. LOONEY:  I have no other questions.

15   CROSS-EXAMINATION:

16   BY MS. BRETTA:

17   Q.   Gail, Exhibit 31, which is the deed that you

18       signed in Attorney Bower's office --

19   A.   Yes.

20   Q.   -- when you signed that document, you were

21       promised that you would be paid money; correct?

22   A.   Yes.

23   Q.   And you never received that money; correct?

```
 1    A.    My ship never came in.  It came in docked and did

 2          its thing and left.

 3    Q.    But it was your instruction that the deed be held

 4          until you got paid your money; is that correct?

 5    A.    Yes.

 6              MS. BRETTA:  I have no other questions.

 7    REDIRECT EXAMINATION:

 8    BY MR. LOONEY:

 9    Q.    Whose instruction was it that the deed be held?

10    A.    I believe it was told to Mr. Consoli.  They had

11          an agreement together; Mr. Bowers and

12          Mr. Consoli.

13    Q.    What would it take to trigger the deed to be

14          released and given to Mr. LaFata?

15    A.    For me to have money, I was hoping that he would

16          sell and move to East Oshkosh.

17    Q.    But you were going to receive some money and the

18          deed would be --

19    A.    Then it would actually be recorded.

20    Q.    How much were you going to receive?

21    A.    I couldn't tell you how much because now that

22          it's been a while, I'd love to -- like all these

23          other people, you get more; you know, what --
```

```
1          interest or whatever.

2     Q.   Was that agreement put in writing?

3     A.   I believe so.  I believe it was.  I signed it,

4          but like I said, paperwork to me -- when it comes

5          him, it doesn't mean anything to me anymore.

6     Q.   But you don't have a copy of that agreement?

7     A.   I don't.  Mr. Bowers may have a copy of it.  I

8          know it was -- I couldn't tell you how much.  All

9          I know, at that point when I gave him this, I

10         said I'd really like to know how much this land

11         is worth.  I'd like to know how much this is

12         worth.  I would like to know how much someone

13         would buy this from me because if he can't pay

14         me, let somebody else pay me.  At least I can get

15         some of my money back.  I just want to pay back

16         my debt.  I'll give you my Social Security

17         number, which you probably have.  Look through

18         it.  See what you owe.  I'm not going to get

19         anything out of this.  I just want to get my

20         credit back, to move on with my life because my

21         life is just in limbo.

22         RECROSS EXAMINATION:

23         BY MS. BRETTA:
```

52

```
 1    Q.    I have one more follow-up question.  When you

 2          divorced Mr. LaFata and you sold him 26 Jasper

 3          Street, you were still the owner of 31 Enfield

 4          Ave.?

 5    A.    Yes, I was.

 6    Q.    As part of the sale of Jasper Street, you didn't

 7          plan on selling off 31 Enfield Ave.  To

 8          Mr. LaFata, did you?

 9    A.    No.  I wanted to keep it just for my own purposes

10          because I thought I would get some money out of

11          it.

12                (WHEREUPON, the deposition concluded at

13          11:21 a.m.)

14

15

16

17

18

19

20

21

22

23
```

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION                    CHAPTER 13
                                    No. 04-44511-JBR

*********************************
IN RE:  VITO A. LAFATA,                  *
          Debtor                         *
AND                                      *
EASTERN SAVINGS BANK FSB;                *
    Plaintiff                            *
VS.                                      *
VITO A. LAFATA,                          *
    Defendant                            *
*********************************


        DEPOSITION of LINDA LINK CASHMAN, a

witness called on behalf of the Defendant,

taken pursuant to the applicable provisions of

the Massachusetts Rules of Civil Procedure,

before Jane M. Walsh, Shorthand Reporter and

Notary Public in and for the Commonwealth of

Massachusetts, at the offices of Bretta &

Grimaldi, 19 Mystic Avenue, Medford,

Massachusetts, on Monday, June 6, 2005,

commencing at 10:15 a.m.



        COMMONWEALTH COURT REPORTING
            29 GARFIELD AVENUE
        HYDE PARK, Massachusetts 02136
              (617) 364-5865



50

1          going to lend at the time when I underwrote was a

2          hundred and sixty-five thousand.  I wanted to get

3          a signed broker fee agreement to ensure that the

4          broker was working on behalf of the client.

5     Q    When you say "broker agreement," you're talking

6          about the mortgage broker?

7     A    That's correct.

8     Q    Okay.

9     A    "Legal to review."  It is a general practice at

10         the bank, income, stating that we were going to

11         use the borrower's bank statements and S.S.I.

12         income.  If we're using rental income, how much is

13         it?  Statements, if it was a bank account, new

14         bank account with Mr.'s name.  This is only for

15         me, so a lot of these personal notes are to me

16         while just, you know, the files come through my

17         desk to underwrite.  So some of them might not

18         sound like true stips, but to me I'll be able to

19         recall.  Title, clear title, Stip No. 7 is title,

20         clear title, assigned to E.S.B. for loan amount in

21         borrower's name.

22    Q    What does that entry mean on that document?

23    A    It means that we have a lien on 26 Jasper Street

24         which encumbers the property and the house, that

51

```
 1            there is nothing before us, that we are in first

 2            lien position and there isn't anything that will

 3            jeopardize our first lien position of 26 Jasper.

 4     Q      Is that a stipulation or is that a conclusion?

 5     A      Is that a conclusion?  No, it's to verify that we

 6            have a title policy that's clear, that's assigned

 7            to E.S.B., so no.

 8     Q      So in your entry for No. 7 you're --

 9     A      Requesting.

10     Q      -- requesting this.  It's not that you've

11            concluded that?

12     A      No.

13     Q      Who are you requesting it of?

14     A      Our processor will contact the title company.  The

15            title company will provide us with the policy, so

16            the policy will be provided back to us for review

17            by legal counsel and me and we will, between

18            legal, me and the title company, ensure that we

19            have first lien position on 26 Jasper which

20            encumbers the house and property.

21     Q      Are you talking title commitment versus title

22            policy?

23     A      That's correct.

24     Q      You are talking about title commitment?
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re:                                    )
                                          )
                                          )
VITO A. LAFATA,                           )          BANKRUPTCY APPEAL
                                          )          CIVIL ACTION NO. 05-40010-JLT
         Debtor                           )
                                          )
                                          )

<u>CERTIFICATE OF SERVICE</u>

I, Debra D. Lawler, hereby certify that on July 22, 2005 I delivered true and correct

copies of the Motion to Extend the Time for Filing the Notice of Appeal to the individuals listed

below, electronically or by first class mail.

Laurel E. Bretta, Esq.
Bretta and Grimaldi, P.A.
19 Mystic Avenue
Medford, MA 02155
(Counsel to Vito Anthony LaFata, Appellee)

Denise M. Pappalardo, Esq.
Chapter 13 Trustee
P.O. Box 01601
Worcester, MA 01601

_____
Debra D. Lawler, Legal Assistant
Bartlett Hackett Feinberg P.C.
10 High Street, Suite 920
Boston, MA 02110
Tel: 617-896-6207

1